STATE OF TEXAS v. GALVESTON, HARRISBURG & SAN ANTONIO RAIL-
WAY COMPANY ET AL.

No. 1594. Decided November 7, 1906.

**1.—Taxation—Railways—Gross Receipts—Constitution—Equal Protection of
Law.**

The statute imposing on railway companies a tax equal to one percent of
their gross receipts (Act of July 5, 1905) does not violate article 14, section 1,
of the Constitution of the United States, by denying to them the equal protec-
tion of the law. Equality does not require indiscriminate application to all
persons as such, but permits classification of subjects of taxation, and is satis-
fied by uniform application to all persons similarly situated. (Pp. 167, 168.)

**2.—Same—Due Process of Law.**

The tax on gross receipts of railways (Act of July 5, 1905) upon reports
made by such companies, on which assessments are made and levy enforced by
regular procedure in the courts, does not violate the Fourteenth Amendment to
the Constitution of the United States, as being a taking of property without
due process of law. (P. 168.)

**3.—Taxation—Excise or Property—Railways—Gross Receipts.**

The tax upon railways of an amount equal to one percent of their gross re-
ceipts (Act of July 5, 1905) is not a tax imposed upon the receipts, but an ex-
cise tax on the privilege of operating their roads in the State, though not so de-
nominated in the act, the receipts being resorted to simply to ascertain the
value of the privilege. Such taxation is not a violation of article 1, section 8,
subdivision 4, of the Constitution of the United States (the commerce clause), by
reason of the fact that receipts of interstate, as well as domestic commerce, are
considered in determining the amount. (Pp. 168–171.)

**4.—Same.**

The tax, measured by gross receipts of all transportation, is imposed on
the domestic corporation for the privilege of transporting in the State, and this
privilege is taxable by the State, though in part consisting of carriage of articles
undergoing interstate transportation. (P. 170.)

**5.—Statutory Construction—Constitutionality.**

A statute, if capable thereof, will be given a construction which will ren-
der it valid rather than one which will place it in conflict with the Constitution.
(P. 170.)

**6.—Double Taxation—Franchise and Occupation.**

The fact that the franchise of a railroad company to exist and do business
is taxed as property does not prevent the State from imposing an occupation tax
upon its business, nor make the same double taxation. (Const., art. 8, sec. 1.)
(Pp. 171, 172.)

**7.—Occupation Tax—Equality and Uniformity.**

Article 8, section 2, of the Constitution of Texas, requires uniformity in the
imposition of occupation taxes "upon the same class of subjects," not necessarily
upon those pursuing the same character of business; and it is not violated by
an occupation tax on railroad companies which is not levied on other carriers.
(P. 173.)

**8.—Same—Domestic and Interstate Receipts.**

The imposition of an occupation tax upon railroads upon the basis of one
percent of their gross receipts is not made invalid for want of equality and uni-
formity by a provision enabling roads partly within and partly without the State,
which were taxed on the basis of the proportion of their entire gross receipts
to their mileage within and without the State, respectively, to establish a differ-
ent basis by showing that some other proportion more fairly represents the rela-
tion which their gross receipts within the State bears to their total receipts.
(P. 173.)

**9.—Occupation Tax—Municipal Taxation.**

Article 8, section 1, of the Constitution of Texas, is a limitation upon, and not a grant of, authority to counties, cities and towns to levy occupation taxes, and the imposition by the Legislature of a state occupation tax upon railways, based on their gross receipts, did not confer a power on such municipalities to levy an additional tax of the same character, their rights so to do, conferred by article 5050, Revised Statutes, being limited to occupations specified in that article. (P. 174.)

**10.—Taxation—Constitution—Retroactive Law.**

The Act of July 5, 1905, levying a tax on railroads to the amount of one percent of their gross receipts for each year, would be unconstitutional if it authorized the collection of such full annual tax for the year 1905, as imposing on the roads by retroactive law a burden to which they were not liable before it became effective; but this does not render the law void as a whole; it should be construed as imposing, for the year 1905, only 169–365 of such amount, and so applied was valid. (Pp. 174, 175.)

**11.—Taxation—Penalties Held Excessive.**

The penalties of $200 per day imposed by the Act of July 5, 1905, for the detention by a railroad company of a tax assessed against it by that law are so excessive that they must be held void by the courts. (Pp. 175, 176.)

**12.—Gross Receipts—What Included.**

The tax imposed on railways by the Act of July 5, 1905, being one percent on their reported "gross receipts from every source whatever from the line of railroad," includes all receipts from its operation, and is not limited to sums received for the transportation of passengers, freight and baggage. (Pp. 176, 177.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

The State sued the defendant railroad companies to recover taxes and penalties and had judgment for the taxes only. Defendants appealed and judgment was reversed and rendered in their favor. The State thereupon obtained writ of error.

*Robert V. Davidson,* Attorney-General, and *William E. Hawkins* and *Jewel P. Lightfoot,* Assistants, for plaintiff in error.—The tax prescribed by chapter 141 of the Acts of the Twenty-ninth Legislature of Texas is an occupation tax. Const. of Texas, art 8, secs. 1, 2 and 17; Albrecht v. State, 8 Texas Crim. App., 217; Languille v. State, 4 Texas, Crim. App., 322, and cases cited; State v. Stephens, 4 Texas, 137; Aulanier v. Governor, 1 Texas, 664; State v. Brock, 9 Texas, 369; Thompson v. State, 17 Texas Crim. App., 258; Texas Banking and Ins. Co. v. State, 42 Texas, 637; Galveston County v. Gorham, 49 Texas, 289; Blessing v. Galveston, 42 Texas, 660; Fahey v. State, 27 Texas Crim. App., 161; Higgins v. Rinker, 47 Texas, 396; Pullman Co. v. State, 64 Texas, 274; Maine v. Grand Trunk Railway, 142 U. S., 217; State Railroad Tax Cases, 92 U. S., 603; State Tax on Railway Gross Receipts, 15 Wall., 284; Nathan v. Lousiana, 8 How., 73; Cooley on Tax. (3d ed.), 1094, et seq; Cumberland R. R. Co. v. State, 52 L. R. A., 764; Capital City Water Co. v. Board of Revenue, 117 Ala., 303; Florida C. & P. R. R. Co. v. Columbia, 54 S. C., 266; Spreckles Sugar Refining Co. v. McClain, 192 U. S., 397; Pacific Ins. Co. v. Soule, 7

Wallace, 433; Veazie Bank v. Fenno, 8 Wall., 533; Scholey v. Rew, 23 Wall., 331; Nicol v. Ames, 173 U. S., 509; Knowlton v. Moore, 178 U. S., 41; Patton v. Brady, 184 U. S., 608.

The Legislatures of Texas have always treated, classified and construed gross receipts taxes as occupation taxes. Art. 7, sec. 27, Const. of Texas, 1845; art. 7, sec. 27, Const. of Texas, 1861; art. 7, sec. 27, Const. of Texas, 1866; art. 7, sec. 27, Const. of Texas, 1869; art. 8, secs. 1 and 2, Const. of Texas, 1876; Acts Called Sess. 12th Leg., 1870, p. 199; Acts 16th Leg., Gen Laws, 1879, p. 143; Acts 17th Leg., Gen. Laws, 1881, p. 58; Acts 21st Leg., Gen. Laws, 1889, p. 28; Acts 23d Leg., Gen. Laws, 1893, p. 156; Rev. Stats., 1895, pp. 1019, 1075; Acts 25th Leg., Gen. Laws, 1897, pp. 140, 170; Acts 29th Leg., Gen. Laws, 1905, pp. 374, 427, 336 and 358.

The nature, character and effect of a tax can not be determined by the failure of the Legislature to give it a name, or to declare in so many words for what purpose, or with what design or intent the tax is levied; and especially is this true when, as in these cases, the tax can be sustained as valid and constitutional upon no other ground than that it is an occupation tax, or a specific tax under article 8, section 17, of our Constitution. If possible a statute must be so construed as to uphold it. Sutherland v. DeLeon, 1 Texas, 305; Osborne v. Florida, 164 U. S., 654; Hooper v. California, 155 U. S., 648; People v. State Board, 105 Am. St. Rep., 682, and cases cited; Gibson County v. Pullman Co., 42 Fed. Rep., 572; Price Co. v. Atlanta, 105 Ga., 358.

Taxes do not constitute a mere ordinary debt, and the collection of taxes and of penalties and forfeitures incidental thereto is generally held to authorize a resort to legislation more summary and more drastic than would, in case of an ordinary obligation, be deemed due process of law. Penal Code of Texas, art. 115; Rev. Stats., art. 500; Rev. Stats., art. 5232j; Rev. Stats., art. 517; McFadden v. Longham, 58 Texas, 584; Higgins v. Bordages, 28 S. W. Rep., 351; Masterson v. State, 42 S. W. Rep., 1005; Caldwell v. State, 14 App., 171; McMillen v. Anderson, 95 U. S., 41; Murray's Lessee v. Hoboken Land Imp. Co., 18 How., 282; Brannon, 14th Amend., pp. 150-1, 320-3; Pomeroy's Const. Law, Bennett's ed., 187-191; Cooley on Taxation (3d ed.), p. 51, et seq.; Cooley on Const. Lim., 506; McCarrol's Lessee v. Weeks, 5 Hayw. (Tenn.), 246; Wulzen v. Board of Supervisors, 101 Cal., 15.

The portions of the Act relative to taxes and method of assessment and to a penalty of ten per centum of the amount of the tax do not deny due process of law. Union C. L. Ins. Co. v. Chowning, 86 Texas, 658; Kehrer v. Stewart, 197 U. S., 69; Murray's Lessee v. Hoboken Land & Imp. Co., 18 How., 272; McMillan v. Anderson, 95 U. S., 41; Davidson v. New Orleans, 96 U. S., 99; Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S., 237; Pacific Ex. Co. v. Siebert, 142 U. S., 353; Giozza v. Tiernan, 148 U. S., 657, upholding a Texas statute; Leeper v. Texas, 139 U. S., 462; Brannon's 14th Amend., 150-1; Pomeroy's Const. Law, 187-191; Cooley on Taxation (3d ed.), p. 51, et seq.; Ex parte Lynch, 16 S. C., 32; Scott v. Watkins, 22 Ark., 556; People v. Seymour, 16 Cal., 332; State v. Moss, 69 Mo., 495; McCarrol v. Weeks, 5 Hayw. (Tenn.), 246; Myers v. Park, 8 Heisk. (Tenn.), 550; McFadden v.

Longham, 58 Texas, 584; Texas Banking Co. v. State, 42 Texas, 636; Blessing v. Galveston, 42 Texas, 641; Philadelphia & R. R. R. Co. v. Com., 13 A. & E. Ry. Cases, 365.

Nor do they deny the equal protection of the laws. Masterson v. State, 42 S. W. Rep., 1003; Union Cent. Life Ins. Co. v. Chowning, 86 Texas, 657, and cases cited; New York Life Ins. Co. v. Orlopp, 61 S. W. Rep., 340; Brooks v. State, 58 S. W. Rep., 1032; Languille v. State, 4 Texas Crim. App., 322; Thompson v. State, 17 Texas Crim. App., 258; Fahey v. State, 27 Texas Crim. App., 161; Rippy v. State, 68 S. W. Rep., 687; Pacific Ex. Co. v. Siebert, 142 U. S., 353; Cook v. Marshall County, 196 U. S., 263; Savannah, Thunderbolt, etc., R. R. Co. v. Savannah, 198 U. S., 392; Kehrer v. Stewart, 197 U. S., 69; Armour Packing Co. v. Lacy, 200 U. S., 226; Regan v. Farmer's Loan & Trust Co., 154 U. S., 362; Smyth v. Ames, 169 U. S., 466; Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S., 237; Atchison, Topeka & S. F. Ry. Co. v. Matthews, 174 U. S., 106; Fidelity Ins. Co. v. Mettler, 185 U. S., 308; Merchants' Life Assn. v. Yoakum, 98 Fed. Rep., 251; Brannon's 14th Amend., 320-3; Pomeroy's Const. Law, Bennett's ed., 194, 201; Cooley on Tax., 72 et seq.; Cooley on Const. Lim., 506; Mackay v. San Francisco, 113 Cal., 392; McGhee v. State, 92 Ga., 21; Sears v. Cottrell, 5 Mich., 250; Knoxville & O. Ry. Co. v. Harris, 43 S. W. Rep., 115; Weaver v. State, 89 Ga., 639; St. Louis v. Sternberg, 69 Mo., 303; State v. Consolidated Va. Min. Co., 16 Nev., 432; People v. State Board, 174 N. Y., 417; For opinion of Supreme Court of United States affirming this decision, see 105 Am. St. Rep., 707; Lacy v. Packing Co., 134 N. C., 567; see Packing Co. v. Lacy, supra; State v. Hammond, 110 La., 186; Ex parte Lynch, 16 S. C., 32; Scott v. Watkins, 22 Ark., 556.

If the penalty prescribed by the Act is a fine or a punishment within the meaning of section 13 of article 1 of the Constitution of Texas, it is not excessive. Languille v. State, 4 Texas Crim. App., 312; City of Marshall v. Snediker, 25 Texas, 470; Galveston & W. Ry. v. Galveston, 96 Texas, 526; Pacific Express Co. v. Siebert, 142 U. S., 339; Western U. Tel. Co. v. Indiana, 165 U. S., 307; Maine v. Grand Trunk Ry., 142 U. S., 217; McCulloch v. Maryland, 4 Wheat., 316; State v. Rodman, 58 Minn., 393; Louisville & Nashville Ry. Co. v. Commonwealth, 85 Ky., 198; McChesney v. People, 99 Ill., 219; Burlington v. Burlington Ry. Co., 41 Iowa, 141; Miligan v. Hintrager, 18 Iowa, 171; State v. Moss, 69 Mo., 495; Scott v. Watkins, 22 Ark., 556; Ex parte Lynch, Trustee, 16 S. C., 32; State v. Hayne, 4 S. C., 403; Nevada v. Consolidated Min. Co., 16 Nev., 432; State v. Carson Savings Bank, 17 Nev., 165; Myers v. Park, 8 Heisk. (Tenn.), 550; Nance v. Hopkins, 10 Lea (Tenn.), 511; People v. Horn Sil. Min. Co., 105 N. Y., 88; State v. Cohen, 84 N. C., 771; Stewart v. Potts, 49 Miss., 750; Cousins v. State, 50 Ala., 113; St. Louis v. Sternberg, 69 Mo., 289; Weaver v. State, 89 Ga., 639; McGhee v. State, 92 Ga., 21; People v. Seymour, 16 Cal., 332; Mackay v. San Francisco, 113 Cal., 392.

The Act is not an ex post facto or retroactive law, but acts prospectively only, and the tax prescribed to be paid during the year 1905 was for the unexpired part of that year after the Act took effect. Grand

Lodge v. Stumpf, 58 S. W. Rep., 841; McPhail v. Burris, 42 Texas, 143; Mellinger v. City of Houston, 68 Texas, 42; Galveston, B. & C. N. R. R. Co. v. Gross, 47 Texas, 428; Cooley on Taxation, p. 495, and cases cited; End. Interp. St., sec. 273.

The taxes prescribed by the Act are equal and uniform upon the same class of subjects within the limit of the authority levying the tax. Const. of Texas, art. 8, sec. 2; Thompson v. State, 17 Texas Crim. App., 256; Clark v. Finley, 93 Texas, 179; Albrecht v. State, 8 Texas Crim. App., 216; Languille v. State, 4 Texas Crim. App., 312; Texas Banking and Ins. Co. v. State, 42 Texas, 636; Blessing v. Galveston, 42 Texas, 641; Supreme Lodge v. Johnson, 81 S. W. Rep., 18; Mullinix v. State (Texas Crim., 1901), 60 S. W. Rep., 768; Brooks v. State, 58 S. W. Rep., 1032; Pullman Palace Car Co. v. State, 64 Texas, 274; Fahey v. State, 27 Texas Crim. App., 161; Ex parte Williams, 31 Texas Crim. App., 262; State Tax Cases, 92 U. S., 576; Savannah, etc., Ry. v. Savannah, 198 U. S., 392; People v. Commissioner, 199 U. S., 53, reported in 105 Am. St. Rep., 693; Armour Packing Co. v. Lacy, 200 U. S., 226, 26 Sup. Ct. Rep., 232; Tiedeman, Lim., sec. 101, p. 282; Cooley, Const. Lims., 12, 87, 138; Cooley on Taxation (3d ed), pp. 261-2, 1095; Burroughs on Tax., secs. 53-4; McGhee v. State, 92 Ga., 24 (17 S. E., 276); Scottish U. Ins. Co. v. Herriott, 109 Iowa, 606; Hodgson v. City of New Orleans, 21 La. Ann., 301; People v. Coleman, 4 Cal., 46, 55; State v. Hammond, 110 La., 186; Lacy v. Packing Co., 134 N. C., 567.

The tax prescribed by chapter 141 of the Acts of the Twenty-ninth Legislature of Texas is not, in substance or effect, a tax, or a burden upon, or a regulation of interstate commerce. The tax is not upon articles of or receipts from interstate commerce, and such receipts are immaterial insofar as they enter into and become part of the measure by which the amount of the tax is determined. Maine v. Grand Trunk Ry. Co., 142 U. S., 217; State Tax on Railway Gross Receipts, 15 Wall., 284; Wisconsin & Michigan Ry. Co. v. Powers, 191 U. S., 387; Delaware Ry. Tax Case, 18 Wall., 206; Erie Ry. Co. v. Pennsylvania, 21 Wall., 492; New York, L. E. & W. Ry. Co. v. Pennsylvania, 158 U. S., 431; McHenry v. Alford, 168 U. S., 651; State Railroad Tax Cases, 92 U. S., 575; Nathan v. Louisiana, 8 How., 73; Home Ins. Co. v. New York, 134 U. S., 594; Western U. Tel. Co. v. Taggart, 163 U. S., 1; Horn Sil. Min. Co. v. New York, 143 U. S., 315; New York State v. Roberts, 171 U. S., 664, and cases cited; Pacific Express Co. v. Siebert, 142 U. S., 350; Cumberland R. R. Co. v. State, 52 L. R. A., 764; Lacy v. Packing Co., 134 N. C., 567.

If there be doubt as to the validity of the Act, it is due the Legislature, as a coordinate branch of the government, that its action should be upheld and its decision accepted by the judicial department. Brown v. City of Galveston, 97 Texas, 9; St. Louis S. W. Ry. v. Smith, 49 S. W. Rep., 631; Languille v. State, 4 Texas Crim. App., 312; Baldwin v. State, 21 Texas Crim. App., 593; Cooley on Const. Lim., 218; Endlich on Interp. of Statutes, sec. 179; People v. State Board, 174 N. Y., 417 (105 Am. St., 707j); Baugher v. Nelson, 52 Am. Dec., 694; Ex parte Loving, 77 S. W. Rep., 509; Sugden v. Partridge, 66 N. E., 655;

Commonwealth v. Barney, 74 S. W. Rep., 181; Knoxville & O. R. R. Co. v. Harris, 43 S. W. Rep., 120.

Chapter 141 of the Acts of the Twenty-ninth Legislature of Texas (1905), pp. 336-338, requires appellant to pay, for the unexpired portion of the year 1905 remaining after said Act took effect, a tax equal in amount to one percentum of its gross receipts for the year ending on the 30th day of June, 1905. Const. of Texas, art. 8; McPhail v. Burris, 42 Texas, 143; Mellinger v. City of Houston, 68 Texas, 42; Galveston, B. & C. N. Ry. Co. v. Gross, 47 Texas, 428; Galveston, H. & S. A. Ry. Co. v. State, 81 Texas, 602; Brooks v. State, 58 S. W. Rep., 1034; Cooley on Tax., pp. 175, 495, and cases cited.

The power of taxation is a legislative and not a judicial power. Const. of Texas, art. 8; State R. R. Tax Cases, 92 U. S., 575; People v. State Board, 174 N. Y., 417; Lacy v. Packing Co., 134 N. C., 573; Cooley on Tax. (3r ed.), 7-10, and numerous cases therein cited.

The power to pro rate or to apportion a tax is included in the power to impose the tax and is vested in the Legislature alone; hence neither the exercise of that power nor the failure to exercise it can be reviewed by the court. City of Marshall v. Snediker, 25 Texas, 473; People v. Miller, 83 N. Y. Supp., 187; Gordon v. Cornes, 47 N. Y., 608; People v. City of Brooklyn, 4 N. Y., 419; Cooley on Tax., p. 175; Barfield v. Gleason, 63 S. W. Rep., 964.

It was clearly within the authority of the Legislature to make the amount of said tax for the unexpired portion of the year 1905, subsequent to the taking effect of said Act, equal to the tax prescribed by said Act for an entire calendar year thereafter, the amount of the tax and the time for which same is to be paid being purely matters of legislative discretion. Brooks v. State, 58 S. W. Rep., 1034; People v. Miller, 83 N. Y. Supp., 187; Knoxville & O. R. R. Co. v. Harris, 43 S. W. Rep., 117, and cases cited.

The amount of a tax and mode of determining the amount are not open to criticism by the courts. Home Ins. Co. v. New York, 134 U. S., 594; Western U. Tel. Co. v. Massachusetts, 125 U. S., 530; Pullman Co. v. Pennsylvania, 141 U. S., 18; Pittsburg R. R. Co. v. Backus, 154 U. S., 421; Western U. Tel. Co. v. Taggart, 163 U. S., 1; Adams Ex. Co. v. Ohio, 165 U. S., 194.

By the words "gross receipts," as used in chapter 141 of the Acts of the Twenty-ninth Legislature of Texas, is meant all receipts arising from or growing out of the employment of the capital of the railroad corporation, whether that capital is employed in the transportation of passengers, freight and baggage, or otherwise. Union Pac. Ry. Co. v. United States, 99 U. S., 419; City of York v. Chicago, B. & Q. Ry. Co., 56 Neb., 572; Detroit, G. R. & W. Ry. Co. v. Commissioner, etc., 119 Mich., 132; People, ex. rel. New York Cent. & H. R. R. Co. v. Roberts, 52 New York Supp., 859; Dardanelle & Russellville Ry. Co. v. Shinn, 40 Am. & Eng. Ry. Cases, 570; Commonwealth v. United States Ex. Co., 157 Pa. St., 579 (27 Atl. Rep., 398); Nashville, M. & S. Turnpike Co. v. White, 22 S. W. Rep., 75.

*Baker, Botts, Parker & Garwood,* for defendant in error—The trans-

portation of freight, passengers and baggage between the states. and between the United States and foreign nations, is commerce among the states and with foreign nations. The Act of the Twenty-ninth Legislature in controversy levies a tax upon such transportation and is an attempt by the state of Texas to regulate commerce among the states and with foreign nations, in violation of the Constitution of the United States; therefore the general demurrer should have been sustained. Gross Receipts Tax Bill, Acts Reg. Sess., 29th Leg., p. 336; Houston Direct Navigation Co. v. Insurance Co. of N. A., 89 Texas, 1; State v. Gulf, C. & S. F. Ry. Co., 44 S. W. Rep., 542; Fielder v. Missouri, K. & T. Ry. Co. of Texas, 46 S. W. Rep., 633; Const. of the U. S., art. 1, sec. 8, subd. 3; Const. of the U. S., art. 1. sec. 9, subd. 5; Hanley v. Kansas City So. Ry. Co., 187 U. S., 617; Champion v. Ames, 188 U. S., 321; Rhodes v. Iowa, 170 U. S., 412; United States v. Trans-Missouri Freight Assn., 166 U. S., 290; Wabash Ry. Co. v. Illinois, 118 U. S., 570; State Freight Tax Cases, 15 Wall., 232; McCall v. California, 136 U. S., 108; Norfolk & W. Ry. Co. v. Pennsylvania, 136 U. S., 114.

The Act of the Legislature in controversy assesses and levies a tax directly upon receipts from both state and interstate commerce, and is a direct burden upon interstate and foreign transportation, and is a regulation of interstate and foreign commerce contrary to subdivision 3, section 8, article 1, of the Constitution of the United States, which provides that Congress shall have power to regulate commerce with foreign nations, among the several states and with the Indian tribes. Gulf, C. & S. F. Ry. Co. v. Dwyer, 75 Texas, 579; Miller & Co. v. Goodman, 91 Texas, 43; Western U. Tel. Co. v. Texas, 62 Texas, 630; Western U. Tel. Co. v. Texas, 105 U. S., 460; Pickard v. Pullman Co., 117 U. S., 34; Fargo v. Michigan, 121 U. S., 230; Pennsylvania & Southern S. S. Co. v. Pennsylvania, 122 U. S., 326; Ratterman v. Western U. Tel. Co., 127 U. S., 411; Postal Cable Tel. Co. v. Adams, 150 U. S., 688; Western U. Tel. Co. v. Seay, 132 U. S., 477; Allen v. Pullman Co., 191 U. S., 171; Western U. Tel. Co. v. Pennsylvania, 128 U. S., 39.

If the tax imposed by the Act of the Legislature in controversy be considered as an occupation or business tax, it is a tax upon the occupation or business of engaging in interstate and foreign commerce, and for that reason the general demurrer should have been sustained. Western U. Tel. Co. v. State, 62 Texas, 630; Deloup v. Port of Mobile, 127 U. S., 648; Western U. Tel. Co. v. Alabama, 132 U. S., 473; Caldwell v. North Carolina, 187 U. S., 622; Brennan v. Titusville, 153 U. S., 289; Robbins v. Shelby Taxing Dist., 128 U. S., 489; Asher v. Texas, 128 U. S., 129; Pullman Co. v. Adams, 189 U. S., 420; Norfolk & W. Ry. Co. v. Sims, 191 U. S., 441; Crutcher v. Kentucky, 141 U. S., 47; Western U. Tel. Co. v. Alabama, 132 U. S., 472. In connection with same case, 80 Ala., 273.

If the Gross Receipts' Tax Bill imposes a tax only upon the intrastate occupation of appellant, the same is, nevertheless, invalid, as it undertakes to arrive at the amount of the tax by the assessment of a sum on, or equal to, one percent of its gross receipts derived from all sources whatsoever, including receipts from interstate and foreign commerce;

for the reason, that in fixing an occupation tax the State can not take those things as a basis which it has no power to tax directly. Western U. Tel. Co. v. State, 62 Texas, 630; Western U. Tel. Co. v. State, 105 U. S., 460; State Tonnage Tax Case, 12 Wall., 204; Corson v. Maryland, 120 U. S., 502, Concurring Opinion; Western U. Tel. Co. v. State Board of Assessments, 80 Ala., 273; Western U. Tel. Co. v. Alabama, 132 U. S., 472; Pickard v. Pullman Co., 117 U. S., 34; Wabash Ry. Co. v. Illinois, 118 U. S., 570; Louisville & N Ry. v. Eubank, 184 U. S., 27; Crandall v. Nevada, 6 Wall., 35.

Under the Constitution and laws of the State of Texas, railway companies are compelled to engage in the occupation of carrying on both state and interstate commerce; and if the tax imposed by the Gross Receipts' Tax Bill be considered as a tax upon a state occupation only, then the same is invalid, because appellant can not renounce the state occupation and continue only the interstate occupation, and such tax will therefore necessarily be a burden upon interstate commerce. Const. of the state of Texas, art. 10, sec. 1; .Rev. Stats. of Texas, arts. 4350 et seq.; Pullman Co. v. Adams, 189 U. S., 420; Allen v. Pullman Co., 191 U. S., 171; Osborne v. Florida, 164 U. S., 656; Kehrer v. Stewart, 197 U. S., 60.

If the tax imposed by the Act in controversy be considered either as a property or an income tax, then the general demurrer should have been sustained, because said Act violates that provision of section 1 of the Fourteenth Amendment to the Constitution of the United States which prohibits any state from denying to any person within its jurisdiction the equal protection of the laws, in this: that no like tax is imposed upon other persons or property by the laws of the State of Texas. Const. of the U. S., 14th Amendment, sec. 1; Mateo County v. Southern Pac. Ry. Co., 13 Fed. Rep., 733.

If the tax imposed by the Act in controversy be considered either as a property or an income tax, then the general demurrer should have been sustained, because said Act violates that provision of section 1 of the Fourteenth Amendment to the Constitution of the United States which prohibits any state from depriving any person of property without due process of law, in this: that the same attempts to levy a tax upon appellant in a manner not authorized by, and contrary to, the provisions of the Constitution of the State of Texas regulating the levy and assessment of taxes. Const. of the U. S., 14th Amendment, sec. 1; Const. of the State of Texas, art. 8, secs. 1, 9, 11, 14 and 18; State v. Austin & N. Ry. Co., 94 Texas, 530.

If the tax imposed by the Act of the Legislature in controversy be considered as an ad valorem or property tax, then the general demurrer should have been sustained, because such Act violates that provision of the Constitution of the State which requires taxation to be equal and uniform, and violates those provisions of the Constitution regulating the assessment of property for taxation, and violates that provision of the State Constitution which provides that a state tax on property shall never exceed 35 cents on the $100 valuation. Const. of Texas, art. 8, secs. 1, 5, 8, 9, 11, 14 and 18; Clegg v. State, 47 Texas, 608;

Dean v. Lufkin, 54 Texas, 268; Llano Cattle Co. v. Faught, 69 Texas, 404.

The Act of the Legislature in question, considered as levying an occupation tax, would be retroactive, if held to impose such tax for the entire year 1905; for the Act itself did not become a law until July 16, 1905, and it could not impose a tax upon an occupation for a period of time prior to the taking effect of the Act, especially where such occupation had already paid a tax for such time by paying one percent of its earnings from the transportation of passengers within the State. Texas Constitution, Bill of Rights, sec. 16; De Cordova v. City of Galveston, 4 Texas, 473; Mellinger v. City of Houston, 68 Texas, 38; Sturges v. Carter, 114 U. S., 519; State v. Switzler, 40 L. R. A., 288; Young v. Town of Henderson, 76 N. C., 420; Hope Mutual Ins. Co. v. Flynn, 38 Mo., 484.

The Act alleged, if considered as an occupation or privilege tax, levies on defendant a tax far in excess of and in addition to the regular ad valorem tax imposed under the general laws of the State of Texas, and is a regulation, hindrance and obstruction to interstate commerce, contrary to the third paragraph of section 8, article 1, of the Constitution of the United States, which provides that "Congress shall have power to regulate commerce with foreign nations and among the several states and with Indian tribes." Const. of the U. S., art. 1, sec. 8, subd. 3; Philadelphia, S. & S. Co. v. Pennsylvania, 122 U. S., 326; State Freight Tax Cases, 15 Wall., 232; Western U. Tel. Co. v. Texas, 105 U. S., 460; Pickard v. Pullman Co., 117 U. S., 34; Fargo v. Michigan, 121 U. S., 230; Ratterman v. Western U. Tel. Co., 127 U. S., 411; Postal Cable Co. v. Adams, 155 U. S., 688; Western U. Tel. Co. v. Alabama, 132 U. S., 477; Allen v. Pullman Co., 191 U. S., 171; Western U. Tel. Co. v. Pennsylvania, 128 U. S., 39; Dubuque & S. C. Ry. Co. v. Richmond, 86 U. S., 584; LeLoup v. Mobile, 127 U. S., 640; Grennan v. Titusville, 153 U. S., 286; Cleveland, etc., Ry. v. Backus, 154 U. S., 445; Southern Ry. Co. v. Asheville, 69 Fed. Rep., 359; State v. Pullman Co., 68 Fed. Rep., 193; Kentucky v. Smith, 92 Ky., 38, 36 Am. St. Rep., 578; Delaware & H. C. Co. v. Pennsylvania, 1 L. R. A., 232; Northern Pac. Ry. Co. v. Raymond, 1 L. R. A., 732; Vermont C. Ry. Co. v. Vermont & C. Ry. Co., 63 Vt., 19 (10 L. R. A., 563); State v. Woodruff Car Co., 114 Ind., 155.

Said Act is in contravention of section 1 of the Fourteenth Amendment to the Constitution of the United States, providing that no state shall deny to any person within its jurisdiction the equal protection of the law, in this: that this defendant and other railroad compaines are selected from among the masses of persons and property in the State, and certain taxes are imposed upon it, which are not imposed upon other persons and property in the State, and the reports of certain persons, officers and agents required by said Act are given the effect of an absolute assessment of said property for taxation; and it imposes upon this defendant and other railway corporations similarly situated, a burden of taxation which is unequal, unreasonable and discriminatory, and such as is not imposed upon other persons, citizens or taxpayers

of the State of Texas, and therefore deprives defendant of the equal protection of the law. Fourteenth Amend. to Const. U. S., sec. 1; County of San Mateo v. Southern Pac. Ry. Co., 13 Fed. Rep., 733; Cleveland, etc., Ry. v. Backus, 154 U. S., 445.

Section 19 of article 8 of the Constitution of the State of Texas exempts the incomes from lands used for farming purposes from taxation; therefore incomes from other property within the State of Texas can not be taxed without violating the first section of the Fourteenth Amendment to the Constitution of the United States. Const. of Texas, art. 8, sec. 19; Const. of the U. S., 14th Amend., sec. 1; Russell v. Croy, 164 Mo., 69.

Taxation shall be equal and uniform, and all property in this state, whether owned by natural persons or corporations other than municipal, shall ·be taxed in proportion to. its value. Const. of Texas, art. 7, sec. 1; Texas Bank & Ins. Co. v. State, 42 Texas, 639; City of Marshall v. Snediker, 25 Texas, 471; City of Austin v. Gas Co., 69 Texas, 187; Norris v. City of Waco, 57 Texas, 641; Higgins v. Bordages, 88 Texas, 458; Cooley on Taxation (2d ed.), p. 2; Pittsburg C. & St. L. Ry. Co. v. Ohio, 16 L. R. A., 381.

Said Act is violative of section 16, article 1 of the Constitution of the State of Texas, which provides that no ex post facto law, retroactive law or law impairing the obligation of contracts, shall be made. Const. of Texas, art. 1, sec. 16; Selikirk v. Bates, 1 Dallam, 472; Mellinger v. City of Houston, 68 Texas, 43.

Said Act, if considered as an occupation tax, is contrary to and violative of the provisions of section 2, article 8 of the Constitution of Texas, which provides that all occupation taxes shall be equal and uniform upon the same class of subjects within the limit of the authority levying the tax. Const. of Texas, art. 8, sec. 2; Pullman Pal. C. Co. v. State, 64 Texas, 274; Norris v. City of Waco, 57 Texas, 641; ex parte Williams, 20 S. W. Rep., 580; ex parte Overstreet, 46 S. W. Rep., 826; Raney v. State, 53 S. W. Rep., 882; State v. Ashbrook (Mo.), 55 S. W. Rep., 627.

The tax levied by the Act of the Legislature in controversy, being directly upon and necessarily affecting interstate and foreign transportation, is a regulation of interstate and foreign commerce, contrary to subdivision 3, section 8, article 1, of the Constitution of the United States, which provides that Congress shall have power to regulate commerce with foreign nations and among the several states and with the Indian tribes. Const. U. S., art. 1, sec. 8, subd. 3; Philadelphia, S. & S. Co. v. Pennsylvania, 122 U. S., 326; Postal Cable Co. v. Adams, 155 U. S., 688; Allen v. Pullman Co., 191 U. S., 171.

Where the property of a railway company, engaged in interstate commerce, has been assessed, valued, equalized and taxed in the same way as other property situated within the State has been assessed, valued, equalized and taxed, any occupation tax, or tax under any name, whether levied upon the carrier's right to do business in the State, or levied against it generally without limitation, and whether taking the form of a certain specific amount or a certain percent of the receipts derived from its business, is void·under the Constitution and laws of the United

States, because it imposes an unjust burden upon an instrumentality of interstate commerce. LeLoup v. Mobile, 127 U. S., 640; Brennan v. Titusville, 153 U. S., 286; Cleveland, etc., Ry. Co. v. Backus, 154 U. S., 445; Pacific Express Co. v. Siebert, 142 U. S., 349; Stockard v. Morgan, 185 U. S., 27.

The State has no power to legislate upon the subject of interstate commerce, nor to place any restriction upon it, and insofar as said Act of the Legislature has such effect, the same is void. Miller & Co. v. Goodman, 91 Texas, 43; Robbins v. Shelby Co. Tax. Dist., 128 U. S., 489; Asher v. Texas, 128 U. S., 129.

A railway company engaged in the occupation of carrying on both state and interstate and foreign commerce, can not be subjected to an occupation tax on the state occupation, for the reason, that it can not avoid the payment of the tax by renouncing the state occupation and continuing to pursue the interstate and foreign occupation. Rev. Stats., arts. 4350, et seq., 4535-4539, 4574; Pullman Co. v. Adams, 189 U. S., 420; Allen v. Pullman Co., 191 U. S., 171; Osborne v. Florida, 164 U. S., 656; Kehrer v. Stewart, 197 U. S., 60.

Where the Constitution and laws of a state authorize the incorporation and chartering of a railroad company for the purpose of engaging in the business of a common carrier of freight and passengers, and the Constitution does not reserve the authority on the part of the State or the Legislature of the State to alter, amend or repeal the charter of such corporation; and a railway company has been chartered in acordance with law, and has acquired property for use in carrying on its business as a common carrier, and has been taxed and has paid its taxes on such property in the same proportion and at the same rate as other property, then any Act of the Legislature of the State imposing an additional tax in the nature of an occupation, license or business tax would be a violation of the implied contract between the State and such corporation by which the State had agreed and contracted that such corporation might engage in the business of a common carrier of freight and passengers. Const. of Texas, art. 10, secs. 1 to 9, inclusive; Rev. Stats. of Texas, arts. 4350, et seq.; Const. of Texas, art. 1, sec. 16; Const., U. S., art. 1, sec. 10, subd. 1.

Defendant is already taxed upon its franchise both of corporate existence and corporate powers, and to sustain the tax under the Act in question as a franchise tax would produce double taxation. Const. of Texas, art. 8, sec. 1; Acts of the 29th Leg., pp. 21, 100; State v. Austin & N. W. Ry. Co., 94 Texas, 530; Rosenberg v. Weeks, 67 Texas, 578; Adams Ex. Co. v. Ohio St. Aud., 166 U. S., 185; Gulf & Ship Island R. R. Co. v. Hewes, 183 U. S., 66; Meerscheidt v. Tel. Co., 65 S. W. Rep., 381.

Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability, in relation to transactions for a consideration already passed, is retroactive and retrospective. DeCordova v. City of Galveston, 4 Texas, 474; Sherwood v. Fleming, 25 Texas Supp., 428; Brooks v. State, 58 S. W. Rep., 1034; Drexel & Co. v. Com-

monwealth, 46 Pa., sec. 31; Eldridge v. Tibbetts, 10 La., 3004; Municipality v. McChoud, 6 La. Ann., 610.

Where common carriers are competitive .for a large part of the traffic carried, the levying of a large occupation tax upon some of such common carriers, and exempting others which are their competitors from such tax, would be an arbitrary discrimination against, and would be oppressive to, the carriers so taxed. Const. of Texas, art. 8, sec. 2; Pullman Palace Car Co. v. State, 64 Texas, 274; Connelly v. Union Sewer Pipe Co., 184 U. S., 540; Gulf, C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150.

If the Act of the Legislature in controversy be considered as levying an occupation tax upon corporations and persons, for engaging in and carrying on the business of state commerce only, such tax would be invalid, because it would not be equal and uniform upon the same class of subjects. Const. of the State of Texas, sec. 2, art. 8; Norris v. City of Waco, 57 Texas, 641; Pullman Pal. C. Co. v. State, 64 Texas, 274; ex parte Williams, 20 S. W. Rep., 580; ex parte Overstreet, 53 S. W. Rep., 882; State v. Ashbrook (Mo.), 55 S. W. Rep., 627.

As the Act of the Legislature in controversy did not go into effect until July 17, 1905, the same could not be enforced for that portion of the year which had then expired, without making it retroactive. Const. of Texas, art. 1, sec. 16; Brooks v. State, 58 S. W. Rep., 1034; De Cordova v. City of Galveston, 4 Texas, 474; Sherwood v. Fleming, 25 Texas Supp., 428; Drexel & Co. v. Commonwealth, 46 Pa. St., 31.

An Act of the Legislature imposing taxes, and imposing penalties and forfeitures for the nonpayment thereof so severe as will deter, or were intended to deter, the parties affected thereby from testing the validity and constitutionality of such Act in court, is void. Const. of Texas, art. 5, sec. 3; art. 1, sec. 13; Const. of the U. S., 14th Amend., sec. 1; Dillingham v. Putnam, 14 S. W. Rep., 303; City of Henrietta v. Eustis, 87 Texas, 16; Cotting v. Kansas City Stock Yards, 183 U. S., 79; Davidson v. Jennings, 83 Am. St. Rep., 49.

Where an Act of the Legislature imposes a tax and fixes penalties and forfeitures for its nonpayment or for the failure to do anything else in the Act required, and any portion of the tax itself attempted to be collected thereunder by the officers clothed with the authority of collecting the same is invalid, or can not be collected, then the penalty or forfeiture for the nonpayment of the tax, or the doing of any other act therein provided, can not be collected or enforced. United States Trust Co. v. New Mexico, 183 U. S., 544; Michigan Central Ry. Co. v. Slack, Holmes (U. S.), 231; Cooley on Taxation (2d ed.), 90, 459; 27 Am. & Eng. Ency of Law, p. 779; County of Redwood v. Winona St. P. L. Co., 40 Minn., 512.


BROWN, ASSOCIATE JUSTICE.—The defendants in error, the Galveston, Harrisburg & San Antonio Railway Company, the New York, Texas & Mexican Railway Company, the Gulf, West Texas & Pacific Railway Company and the Galveston, Houston & Northern Railway Company were all incorporated under the laws of the State of Texas prior to the year 1905 and each of them was engaged in operating its line of railroad,

which was situated wholly within the State, during the year 1905. Under an Act of the Legislature of the State of Texas, approved May 3, 1905, the Galveston, Harrisburg & San Antonio Railway Company acquired the property, franchises and rights of each of the other companies named and is responsible for all of the obligations of the said other railroad companies.

The Twenty-ninth Legislature of the State of Texas enacted the following statute, approved on the 17th day of April, 1905, which took effect on the 15th day of July, 1905:

"An Act imposing a tax upon railroad corporations, the receivers thereof, and other persons, firms and associations of persons, owning, operating, managing or controlling any line of railroad in this state, for the transportation of passengers, freight and baggage or either, equal to one percent of their gross receipts, and providing for the collection and payment thereof, and repealing the existing tax on the gross passenger earnings of railroads.

"Section 1. Be it enacted by the Legislature of the State of Texas: Every railroad corporation, or the receiver thereof, and every other person, firm or association of persons, owning, operating, managing or controlling any line of railroad in this State, for the transportation of passengers, freight and baggage, or either, shall pay to the State an annual tax for the year 1905, and for each calendar year thereafter, equal to one percent of its gross receipts, if such line of railroad lies wholly within the State; and if such line of railroad lies partly within and partly without the State, it shall pay a tax equal to such proportion of the said one percentum of its gross receipts as the length of the portion of such line within the State bears to the whole length of such line; provided, that if satisfactory evidence is submitted to the Comptroller at any time prior to the date fixed in section 2 of this Act for the payment of the tax herein imposed, that any other proportion more fairly represents the proportion which the gross receipts of any such railroad for any year within this state bears to its total gross receipts, it shall be his duty to levy and collect for such year from such railroad a tax equal to such other proportion of one percentum of its total gross receipts.

"Sec. 2. For the purpose of determining the amount of such tax, the president, vice-president, general manager, treasurer or superintendent of such railroad corporation, or the receiver thereof, or such other persons, firm or association of persons, shall, on or before the 1st day of October, 1905, and annually thereafter, report to the Comptroller of Public Accounts, under oath, the gross receipts of such line of railroad, from every source whatever, for the year ending on the 30th day of June last preceding, and shall immediately pay to the State Treasurer the annual tax herein imposed, calculated on the gross receipts so reported. The Comptroller shall have power to require such other reports and affidavits as may in his judgment be necessary to protect the interests of the State, and he shall estimate such tax on the true gross receipts thereby disclosed, and assess and enforce the collection of such tax.

"Sec. 4. Should such report not be filed with the Comptroller, and the annual tax thereon estimated paid to the Treasurer on or before the

1st day of October of any year, a penalty of ten percentum upon the amount of such tax shall accrue thereon and be added thereto; and in case such report is not made or such tax and the penalty thereon are not paid on or before the 1st day of November thereafter, or in case of a failure to furnish the additional report or affidavit required by the Comptroller, for a longer period than thirty days after demand therefor, or in case of failure to pay within thirty days any tax or additional tax assessed by the Comptroller under this Act, every such railroad corporation, or receiver thereof, or other such person, firm or association of persons, shall forfeit and pay to the State the sum of $200 for each day any of said reports or payments may be delayed, after the expiration of such periods, respectively.

"Sec. 5. The Attorney General is authorized and required, upon request by the Comptroller, to bring suit, in the name of the State, in Travis County, against the proper parties defendant, to recover all taxes, penalties and forfeitures mentioned in this Act, and venue and jurisdiction of such suits is hereby expressly conferred upon the courts of Travis County. Service of all process issued in such suits may be had upon any officer or agent of such person, firm, association of persons, corporation, or receiver thereof, within this state, and such service shall in all respects be held legal and valid.

"Sec. 6. The tax provided for by this Act shall be in addition to all other taxes levied by law. Subdivision 30 of article 5049, Revised Statutes of 1895, and any existing statute imposing a tax upon the gross passenger earnings of railroads, is hereby repealed.

"Sec. 7. The tax imposed by this act shall not be levied upon or collected from any person, firm, association, corporation, or receiver, owning, operating, managing or controlling any line of railroad in the State, after such person, firm, association, corporation or receiver shall have paid the tax upon its intangible assets, as provided for in an Act of the Twenty-ninth Legislature, entitled, 'An Act for the taxation of the intangible assets of certain corporations, and to provide for the creation of a State Tax Board for the valuation of such intangible assets, and for the distribution of said valuation for local taxation, and for the assessment of said assets, and the levy and collection of taxes thereon,' while the same may be in force and effect."

Each of said railroad companies made report to the Comptroller as required by the second section of said Act of "its gross receipts from every source whatever." The reports were accepted and the taxes against each of the said railroads were by the Comptroller assessed upon the gross receipts of each company derived from all sources. Each of the said railroad companies refused to pay the tax assessed as required by law and each of them continued to refuse to pay the same until after the 1st day of November, 1905. This suit was instituted by the Attorney-General of the State of Texas, in the name of the State, in the District Court of Travis County, to recover the tax assessed against each of the said railroad companies and ten percent thereon for the failure to pay the same on October 1, 1905, and also to recover of the said railroad companies the penalties declared by the said Act for the failure and refusal to pay the said sum after the 1st day of November,

1905—the State claiming a forfeiture of $200 for each day from the said 1st day of November until the filing of the suit on the 24th day of November, 1905, and $200 per day for each day from that time until the time the trial should occur. The defendants each filed general demurrers presenting the question of the invalidity of the law because of its conflict with different provisions of the Constitution of the United States and the Constitution of the State of Texas. Special answers were also filed which presented the same questions in different forms. It was alleged that each of said roads was engaged in the transportation of passengers, freight and baggage within the State of Texas which was destined to and came from points beyond the limits of the State and to foreign countries, as well as in the carriage of passengers, freight and baggage between points within the said State of Texas, and that the gross receipts of each of the said companies were made up of the earnings of such road in the carriage of interstate commerce as well as intrastate commerce, which allegation was sustained by the evidence.

In the District Court the case was tried without a jury and judgment was entered in favor of the State for 169-365 of one percent of the gross receipts of each railroad company derived from the carriage of passengers, freight and baggage within the State of Texas, including that which was destined to points beyond the line of the State and also that which came from points beyond the line of the State to the defendants' road within the State. The court refused to enter a judgment for the penalties of $200 per day, claimed by the State, upon the ground that the penalties were so excessive and unreasonable that they were void. Each railroad appealed to the Court of Civil Appeals for the Third District, which, upon a hearing, reversed the judgment of the District Court and rendered judgment for each railroad company.

It is contended by the railroad companies that the Act under examination violates article 14, section 1, of the Constitution of the United States, because it denies to the railroad companies the equal protection of the law. The section of the Constitution above referred to does not require absolute uniformity or equality in levying of taxes by the state government, but the Legislature may classify the different persons or subjects of taxation, and, if the tax levied upon each class is equal and uniform as to that class, then the law is not obnoxious to that provision of the Constitution of the United States. (Magoun v. Illinois, etc., Bank, 170 U. S., 283.) In the case cited the court said: "The clause of the Fourteenth Amendment especially invoked is that which prohibits a State denying to any citizen the equal protection of the laws. What satisfies this equality has not been and probably never can be precisely defined. Generally it has been said that it only requires the same means and methods to be applied impartially to all the constituents of a class so that the law shall operate equally and uniformly upon all persons in similar circumstances. . . . The rule therefore is not a substitute for municipal law; it only prescribes that that law have the attribute of equality of operation, and equality of operation does not mean indiscriminate operation on persons merely as such, but on persons according to their relations." We deem it unnecessary to cite other authority upon this point. The law in question acts uniformly upon all railroad com-

panies of the class specified; that is, "for the transportation of passengers, freight and baggage, or either." We are of opinion that there is no denial of equal protection of the law to the railroad companies by the terms of the statute nor in its enforcement.

It is likewise urged that the statute under consideration is violative of the Fourteenth Amendment of the Constitution of the United States in that it takes the property of the railroad companies without due process of law. The railroad companies make the reports on which the assessments are made and the levy can only be enforced by regular proceedings in court. There is neither in the assessment nor enforcement of the tax any denial of due process of the law. (Castillo v. McConnico, 168 U. S., 674.)

The railroad companies assert and attempt to maintain by authority and argument the proposition that the law under investigation violates the following, article 1, section 8, subdivision 4, of the Constitution of the United States: "The Congress shall have power to regulate commerce with foreign nations and among the several states and with the Indian tribes," because (1) the tax is levied upon the gross receipts of the company derived pointly and indiscriminately from state and interstate commerce; (2) because the railroad companies are engaged in the transportation of state and interstate commerce and the State has no power to levy a franchise or occupation tax upon a corporation so engaged; (3) because the railroad companies are engaged both in state and interstate and foreign commerce and, being chartered by the State, can not abandon the state business, for which reason the law is void as affecting interstate commerce.

If the statute under consideration were held to levy a tax upon the gross earnings of the railroads, it would be a tax upon the proceeds of interstate commerce, therefore, it would be void because in conflict with article 1, section 8, subdivision 4, of the Constitution of the United States, and it would also be an ad valorem tax and conflict with article 8, section 9, of the Constitution of this State, which declares that no more than 35 cents on the $100 of its value shall be levied upon property as an ad valorem tax. A construction that places the statute in conflict with both Constitutions will not be applied if it can be otherwise properly explained. (Butler v. Pennsylvania, 10 How., U. S., 415; Mayor v. Cooper, 6 Wall., 251.)

In determining the validity of the law under the Federal Constitution our judgment must conform to the decisions of the Supreme Court of the United States, and it is pertinent for us to inquire as to what rules applicable to this case that learned tribunal has established. To that task we will address ourselves without undertaking to reconcile real or seeming conflicts in the decisions of that court. Finding in the case of Maine v. Grand T. Ry. Co. (142 U. S., 217) a rule clearly expressed which is applicable to the facts of this case, we will follow and apply it as we understand it.

In the Maine case the statute provided that "every corporation, person or association operating a railroad in the State should pay to the State Treasurer, for the use of the State, an annual excise tax for the privilege of exercising its franchise in this State," and the amount of

such tax shall be ascertained as follows: That "the amount of the gross transportation receipts as returned to the Railroad Commission for the year ending on the 30th day of September next preceding the levy of such tax, shall be ·divided by the number of miles of railroad operated, to ascertain the average gross receipts per mile." The law provides that upon the average gross receipts per mile of each road a given percent should be assessed, varying with the differences in gross receipts per mile. In that case as in this, it was claimed that the tax was an interference with interstate commerce and was a levy upon the gross receipts of the railroad company, but the Supreme Court of the United States held against that contention, saying: "The court below held that the imposition of the ·taxes was a regulation of commerce, interstate and foreign, and therefore in conflict with the exclusive power of Congress in that respect; and on that ground alone it ordered judgment for the defendant. This ruling was founded upon the assumption that a reference by the statute to the transportation receipts and to a certain percentage of the same in determining the amount of the excise tax, was in effect the imposition of the tax upon such receipts, and therefore an interference with interstate and foreign commerce. But a resort to those receipts was simply to ascertain the value of the business done by the corporation, and thus obtain a guide to a reasonable conclusion as to the amount of the excise tax which should be levied; and we are unable to perceive in that resort any interference with transportation, domestic or foreign, over the road of the railroad company or any regulation of commerce which consists in such transportation. If the amount ascertained were specifically imposed as the tax, no objection to its validity would be pretended. And if the inquiry of the State as to the value of the privilege were limited to receipts of certain past years instead of the year in which the tax is collected, it is conceded that the validity of the tax would not be affected; and if not, we do not see how a reference to the results of any other year could affect its character. There is no levy by the statute on the receipts themselves, either in form or fact; they constitute, as said above, simply the means of ascertaining the value of the privilege conferred."

We think that the case now before us comes within the rule of decision laid down in that case. The only difference between the statute of Maine and the statute of Texas consists in the fact that in the Maine statute the tax was declared to be an excise tax and was declared to have been levied for the privilege of operating its railroads in the State of Maine, while in the Texas statute no mention is made of the character of the tax nor of the fact that it is levied for the privilege of operating the roads in this state. If, however, the facts show that the tax levied under the Texas statute is in fact an excise tax, the absence of a designation of it as such will not change the effect of the statute. The terms of the Texas law and of the Maine statute are practically the same, and, measured by the Maine case, the law before us levies an excise tax. The language, "every railroad corporation, or the receiver thereof, and every other person, firm or association of persons, owning, operating, managing or controlling any line of railroad in this state for the transportation of passengers, freight and baggage, or either, shall pay to the ·

State an annual tax," etc., places the tax upon the person or corporation exercising the privilege to operate, manage and control the railroads within this State.

The language quoted is not appropriate for the levy of a tax on the gross receipts of the railroads, but is apt when used to levy a franchise or occupation tax. It is such as was in common use by previous Legislatures of this state for like purposes. The view most favorable to the railroads is that the law is susceptible of the construction that the tax is levied upon the gross earnings of the corporations, but that interpretation would render the law void; and, as we have said, the courts will not apply that construction which would destroy the law when a constitutional purpose can fairly be derived from its terms.

The proposition of the defendants in error that because they are engaged in the carriage of interstate commerce they can not be made to pay an excise or occupation tax on the business of carriers in the State of Texas under the franchises derived from this State is not maintainable and is not supported by the authorities cited thereto. In the case of Osborne v. Florida, 164 United States, 655, the Supreme Court of the United States said: "It has never been held, however, that when the business of the company which is wholly within the State, is but a mere incident to its interstate business, such fact would furnish any obstacle to the valid taxation by the State of the business of the company which is entirely local. So long as the regulation as to the license or taxation does not refer to and is not imposed upon the business of the company which is interstate there is no interference with that commerce by the statute." The tax levied by the law under consideration is placed upon the exercise of the franchises within the limits of the State and in the carriage of local or state business. The reference to the gross receipts of the company is merely a means by which to ascertain the amount of the tax to be levied. The case of Kehrer v. Stewart, 197 United States, 60, is even more to the point. The complainant in that case represented a Chicago firm who shipped meat to Georgia for distribution to customers and in connection with the business of distribution the agent in the same building did a local business of selling meat. It was claimed that he was not liable to the state occupation tax, but the Supreme Court held that he was liable on his local business, saying: "If the amount of domestic business were purely nominal, as, for instance, if the consignee of a shipment made in Chicago upon an order filled there, refused the goods shipped, and the only way of disposing of them was by sales at Atlanta, this might be held to be strictly incidental to an interstate business, and in reality a part of it, as we held in Crutcher v. Kentucky, 141 U. S., 47; but if the agent carried on a definite, though a minor, part of his business in the State by the sales of meat there, he would not escape the payment of the tax, since the greater or less magnitude of the business cuts no figure in the imposition of the tax. There could be no doubt whatever that, if the agent carried on his interstate and domestic business in two distinct establishments, one would be subject and the other would not be subject to the tax, and in our view it makes no difference that the two branches of business are carried on in the same establishment."

If the position taken by counsel for the defendants in error were true, then no state could levy an occupation or excise tax upon its local railroads chartered under its own law because it is a fact of common knowledge that all lines of railroad in the State carry freight and passengers destined to points beyond the State and that which comes from without the State to points within it. The tax levied by the statute here involved is for the operation of the railroads in the carrying of state business; the tax is not upon the carrying of interstate commerce, or the proceeds of it. The fact that articles of interstate commerce are transported in the same cars at the same time will not exempt the roads from the tax for local business. (Kehrer v. Stewart, 197 U. S., 68.)

Upon the authority of Pullman Co. v. Adams, 189 U. S., 420, counsel for the defendants in error assert that because the railroad companies which are chartered by the State can not abandon their local business and are also engaged in the carriage of interstate freight and passengers they are for that reason exempted from taxation for the exercise of the privilege within the State. We repeat, the tax levied by the law before us is for the carriage of freight, etc., within the State. In the case last cited the Pullman Company was a corporation created under the laws of another state and had the right to transact interstate business within the state of Mississippi without license or the payment of any tax whatever, and if the law of that state had placed upon such corporation the requirement that it should procure a license to carry on the business in the State and the terms of the law were such that it could not abandon its local business and at the same time transact its interstate business, there would necessarily have been an interference with and regulation of interstate commerce, and such law would have been void. In this case the corporations were created by the State of Texas and they are not required to secure any license to carry on their local business but are simply taxed for the use of the franchise in carrying on the local business under the charters that they hold from the State. The case of Crutcher v. Kentucky, 141 United States, 47, illustrates the distinction that we have attempted to make. In that case the law of Kentucky required of a foreign corporation, the express company, to secure a license for the transaction of its business, interstate and local, within the limits of Kentucky, and the Supreme Court of the United States held that law to be void. No authority has been cited which supports the proposition so broadly asserted by the attorneys for the defendants in error, and we are of opinion that there is no sound reasoning upon which such a claim can be based.

We are of opinion that the law in question is not in conflict with the provisions of the Constitution of the United States in any particular claimed by the attorneys for the defendants in error.

Defendants in error submit this proposition: "A franchise to be or to do is property; and since appellant has paid, in accordance with the law, taxes upon both its franchise to be and its franchise to do, to impose upon it an additional franchise tax, whether upon its franchise to be or upon its franchise to do, would produce double taxation." In argument counsel referred to the case of State of Texas v. Austin &

Northwestern Railway Company, 94 Texas, 530, to support the contention, that the property of the railroad companies is subjected to double taxation. In that case the railroad company had rendered its railroad, etc., for taxes under the statute of the State which required that it should render "the whole length of the railroad and the value thereof per mile, which valuation shall include the right of way, road bed, superstructure, depots, grounds on which depots are situated, and all shops and fixtures of every kind used in operating said road." Article 5062 of our Revised Statutes provides that, "real property, for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all the buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging to or in any wise appertaining thereto." The assessor and collector of Travis County placed an additional assessment upon the railroad company in the following language: "The intangible personal property of the said Austin & Northwestern Railway Company within the State of Texas, consisting of its rights, privileges, immunities, good will, contracts, and franchises to do and carry on business of a railroad company as common carriers of freight and passengers for hire, value of the same $835,048." This court held that the rendition by the corporation under the general law included its franchise to exist as a corporation and its franchise to do business in the operation of the railroad. After giving the reasons upon which it based the conclusion that the franchise of the corporation was included in the rendition prescribed by the statute, the court said: "If we are correct in this conclusion, then it follows that it was not the intention of the Legislature to tax the franchise of a railroad as a property separate from its real estate. To so tax it would lead to double taxation, which is not permitted." This conclusion was based upon the provision of the statute which included the franchise in the assessment of the real estate and thereby subjected it to the ad valorem tax fixed by law. The additional assessment made by the assessor and collector would have included the property right in the franchise embraced in the first assessment, and therefore the court held that it would constitute double taxation and was not permissible. The fact that the franchise is subjected in this state to an ad valorem tax as property does not militate against the right to tax the persons or the corporations using that property as an occupation any more than would the taxing of the physical property of the railroads, as the tracks, right of ways, cars, etc., operate to prevent the imposition of occupation taxes for the use of them as instruments of transportation. There is nothing in the case cited which intimates a prohibition against levying an occupation tax upon the company which may use the franchises taxed as property. As well might it be held that an ad valorem tax upon a store house, fixtures and goods would preclude an occupation tax upon the merchant for pursuing the business of selling goods.

Article 8, section 1, of the Constitution of this state contains the following provision: "It (the Legislature) may also impose occupation taxes, both upon natural persons and corporations, other than municipal, doing business in this state." Since a corporation can carry on

no business except that for which it holds a franchise from the State, it follows that any tax levied upon a corporation in this state for exercising the privilege of carrying on its business must be classed as an occupation tax under our Constitution, and in all tests of the validity of such a tax, those provisions of the Constitution which apply to occupation taxes must be the standard.

Counsel for the railroad companies assert that if the tax in question be an occupation tax, then it is invalid, because it is in conflict with this provision of section 2 of the above article: "All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax." It is claimed that the statute which levies the tax upon the railroad companies does not levy the same tax upon persons and other corporations engaged in the business of carriers within the limits of the State, therefore, the tax is not uniform and equal upon all the subjects of occupation tax. It will be observed that the provision of the Constitution applies "to the same class of subjects" and not to the persons who may pursue the same character of business. The same rule of construction applies to the Constitution of the State as is applied by the courts to the provision of the Constitution of the United States, providing that no State shall deny to any citizen of the United States equal protection of the law, as it affects the power to levy taxes, and, so tested, the Legislature had the power to constitute railroads, engaged in the carrying business, a class upon which to assess occupation taxes. (Kehrer v. Stewart, 197 U. S., 69.) In the case cited the court said: "As we have frequently held, the State has the right to classify occupations and to impose different taxes upon different occupations. . . . What the necessity is for such tax and upon what occupations it shall be imposed, as well as the amount of the imposition, are exclusively within the control of the State Legislature." (Cook v. Marshall Co., 196 U. S. 274.) While it is true, that language had special reference to the authority of the Federal Courts over the question, it is equally cogent when applied to the construction to be placed upon the State Constitution by our own courts.

It is also asserted that the taxes levied upon the railroad companies is not the same percent of the gross receipts of each of them derived from intrastate business, therefore, it is not equal and uniform as required by the clause of the State Constitution last above quoted. This proposition rests upon the fact that the gross earnings of some of the railroads consist more largely of receipts from interstate business than others, hence one percent upon the gross earnings of each road would not be the same percent of the local earnings of each road. This proposition is supported by Judge Key in a forcible separate opinion filed in these cases but not concurred in by the majority of that court. The contention is based upon the idea that the amount of the tax must be determined by the product of the occupation taxed; in other words, a rate of taxation to be equal must be the same percent of the receipts of the intrastate business of each road. This view of the law has been contended for in many cases in the Supreme Court of the United States and has been determined adversely to the claim of the corpora-

tions. (Maine v. Grand T. Ry. Co., 142 U. S., 217; Home Ins. Co. v. New York, 134 U. S., 594.)

It is insisted by counsel that the law should not be construed to levy an occupation tax because of the consequences which would flow from it; that is, that each county, city and town through which the railroads should be operated, would have the right to levy fifty percent of the state tax for operating the road in and through such county, city or town, which would practically confiscate the property. If that were a proper construction of the Constitution and the laws of this state, then, indeed, it would be a strong argument against putting such construction upon the law; but we are of opinion that such is not the correct interpretation of our Constitution and laws.

The language of the Constitution which is relied upon as authorizing such levy by counties, cities and towns is found in section 1 of article 8 of the Constitution, and is as follows: "The occupation tax levied by any county, city or town, for any year, on persons or corporations pursuing any profession or business, shall not exceed one-half of the tax levied by the State for the same period on such profession or business." No authority to levy a tax is granted to counties, cities or towns by this language. The municipal corporations created by the Legislature would have no power to levy such taxes except by authority derived from the legislative department of the government which is authorized to give power to those corporations to levy occupation taxes, hence the language quoted above is a precautionary limitation upon the power of the Legislature to grant such authority. Without that provision the Legislature could authorize the municipal corporations to levy a tax equal to that levied by the State, or greater, but under the Constitution, expressed in the quotation, the authority of the Legislature is limited so as not to exceed one-half of the tax levied by the State. Article 5050, Revised Statutes, confers authority upon the Commissioners' Courts of the counties to levy taxes and contains this language: "And shall have the right to levy one-half of the occupation tax levied by the State upon all occupations not herein otherwise specially exempted." This provision of the statute applies only to the subjects mentioned in that article which specified a number of occupations that were subject to taxation. That it was not the intention of the Legislature to confer upon the Commissioners' Court power to levy taxes upon all occupations which might thereafter be made the subject of taxation by the statute is made manifest by the terms of the clause, "not herein otherwise specially exempted." The exemption therein specified could only apply to occupations named, hence the authority to tax was limited to those named but not exempted. There is no authority in the law under consideration, nor in any other statute of this state, for any county, city or town to levy upon a railroad any occupation tax for the exercise of its franchise to operate and carry on its business as a carrier. The statute is not in conflict with the Constitution of the State of Texas on this subject.

The State claims that the trial court erred, (1) in not entering judgment in its favor for the whole of the annual tax for the year 1905, and (2) in not giving judgment in its favor for the penalties of $200 per day imposed by the act for the failure to pay the tax on the 1st

day of November, 1905. Section 16, article 1, of our Constitution is in these words: "No bill of attainder, ex post facto laws, retroactive laws, or any law impairing the obligations of contracts shall be made." If the Act in question be construed to embrace the whole of the year 1905 and entitles the State to collect the full annual tax for that year, it would confer upon the State a right against the railroads which did not exist before the law took effect, and it would impose upon each railroad a burden to which it was not liable before the law became effective. It is quite plain that the Act comes within the provision of the section of the Constitution above quoted and is retroactive in its effect. (Sutherland v. DeLeon, 1 Texas, 250.) The defendants in error claim that because the Legislature could not impose the tax for the portion of the year which expired before the law became effective it can not be enforced for any portion of the taxes for the year 1905. The fact that the Legislature had no power to levy the tax for the time anterior to that at which the law took effect does not render it void as a whole, but the court will give effect to it for that proportion of the time which expired after it became effective; that is, the court will sustain the tax so far as the Legislature had authority to impose it. (San Antonio v. Berry, 92 Texas, 325.) The city of San Antonio had power to levy one percent per annum ad valorem tax on property, but the city council levied a greater percent to embrace a time for which the levy could not be made. It was contended that the entire levy was void, but this court sustained the tax, saying: "When suit is instituted by a city or county for the recovery of a tax due to it, and it is found that such tax is in part lawful and in part illegal, if the legal and illegal parts are capable of definite ascertainment and apportionment, a court will apportion the taxes and give judgment for that part which might lawfully have been levied."

The trial court denied a recovery for the penalties prescribed by the Act for a failure to pay the taxes assessed, of which ruling the State complains. Article 1, section 13 of the Constitution of the State declares—"excessive bail shall not be required, nor excessive fines imposed, nor cruel nor unusual punishment inflicted." The term "fines" is synonymous with that of penalties and the section of the Constitution applies to penalties prescribed by this Act for the failure of the parties to pay the taxes. (State v. Horgan, 55 Minn., 184.) The declaration in the Constitution that "fines" shall not be excessive makes it a question for the court to decide under all the facts of each particular case. In this case the penalties of $200 per day would in a year amount to $73,000. This penalty is inflicted for the detention of taxes assessed against the companies. The taxes claimed to be due from the Galveston, Harrisburg & San Antonio Railway Company would amount to $74,724.00 annually, so that the penalties for failure for one year to pay would be nearly one hundred percent of that amount. The tax assessed against the Gulf, Western Texas & Pacific Railway Company would amount to about $1,555.00 for one year, but the penalties for nonpayment of this sum for a year would be $73,000.00, nearly fifty times as much as the amount of the tax. The assessment of a penalty of one hundred percent for the failure to pay a tax would seem to be

sufficiently excessive to authorize a court to declare it to be excessive, but the assessment of more than four thousand percent upon the amount detained can leave no possible question that the penalties are out of all proportion to the amount of money detained, and the law must be held to be void for the penalties.

In his conclusions of law, the learned judge who tried this case gave substantially the following reasons for refusing to enter judgment for the penalties claimed. The State was claiming against the railroad companies more than twice the amount due to it under the law. If the railroad companies had paid the full amount demanded they could not have recovered back by suit against the State that which was unlawfully collected: the only remedy the corporations had was to await the action of the State and secure from the courts a proper construction of the law. The Treasurer of the State was not authorized to receive less than the sum assessed by the Comptroller, hence the railroads could not pay the sum actually due and a tender of what the Treasurer could not accept would have been useless. The State, being in the wrong, can not recover penalties which depended upon a failure of the corporations to perform a duty enjoined by law.

The judge of the District Court excluded from the sum upon which the taxes were to be assessed against each of the railroad companies everything except the receipts for the transportation of passengers, freight and baggage. The State assigns error on this ruling, and claims that the gross receipts from all sources derived by the operation of the railroads in this State was the proper sum upon which to estimate the tax. The language of the Act, "every railroad corporation, or receiver thereof, etc., . . . shall pay to the State an annual tax for the year 1905, and for each calendar year thereafter, equal to one percent of its gross receipts," is without qualification and broad enough to include everything derived from the operation of the railroads within this State. But the second section of the Act, by this language, makes clear the meaning of that quoted from the first section: "For the purpose of determining the amount of such tax, the president, vice-president, general manager, treasurer or superintendent of such railroad corporation, or the receiver thereof, or such person, firm or association of persons, shall on or before the 1st day of October, 1905, and annually thereafter, report to the Comptroller of public accounts under oath the gross receipts of such line of railroad from every source whatever for the year ending on the 30th of June last preceding." The declared purpose of this language is to fix the amount, the standard, by which the tax should be determined and it unequivocally expresses that to be the *"gross receipts from every source whatever* from the line of railroad." This can mean nothing more nor less than that all of the receipts derived from the operation of the railroad in Texas from whatever source are to constitute the fund upon which the one percent is to be assessed as an occupation tax for the operation of the railroad in carrying local freight, etc., which can not by fair construction include any sum which the railroad company may derive from any other source than the operation of its line of railroads, and the supposed complications can not possibly arise. That the railroad officials understood what this law means

is clearly shown by their returns made in conformity thereto and printed in their brief in this case. The trial court erred in not assessing the tax upon the gross receipts derived from the operation of the railroads.

It is ordered that the judgment of the Court of Civil Appeals be reversed, and, proceeding to enter the judgment that the trial court should have pronounced, it is ordered that judgment be here entered in favor of the State of Texas against each of the following named railroad companies, defendants in error, for 169-365 of one percent upon the gross receipts shown by the return made by each of the said railroad companies to the Comptroller of the State; that is, the State of Texas shall have and recover of the Galveston, Harrisburg & San Antonio Railway Company the sum of $34,597.68; and that the State of Texas have and recover of the New York, Texas & Mexican Railway Company the sum of $2,357.55; and against the Gulf, Western Texas & Pacific Railway Company the State shall recover the sum of $719.94; and against the Galveston, Houston & Northern Railway Company the State shall recover the sum of $5,778.11, with interest at six percent from the 8th day of December, 1905, the date of the judgment of the District Court, together with all costs of this suit in each of the courts.

*Reversed and rendered for plaintiff in error.*