# Richmond.

POSTAL TELEGRAPH-CABLE CO., INC., v. CITY OF NORFOLK.

January 13, 1916.

Absent, Cardwell, J.

1. TELEGRAPH AND TELEPHONE COMPANIES—*Licenses—Amount—Graduation.*—A license tax for the purpose of revenue for the privilege of doing intrastate business in a city may be lawfully imposed on a telegraph company, and, in fixing the amount of the license it is allowable to take into consideration the number of poles and feet of conduit used where the ordinance operates upon all alike.   The graduation of license taxes imposed for the purpose of revenue, according to the amount or extent of business, either with or without a fixed minimum, is a common and widely approved practice.

2. LICENSES—*Ad Valorem Tax—Double Taxation.*—The assessment of a license tax for revenue on a corporation for the privilege of doing business and an *ad valorem* tax on the property owned by the company and employed in its business is not double taxation.

3. TELEGRAPH AND TELEPHONE COMPANIES—*License—Confiscatory Rate—Evidence.*—In the absence of proof of relevant facts, the courts cannot assume that the ratio of expense to revenue as to intrastate and interstate telegraphic traffic is the same, nor can such assumption be made by telegraph companies the basis for showing that a local tax on intrastate business is confiscatory.

4. EVIDENCE—*Judicial Notice—"Overhead Charges."*—Courts cannot take judicial notice, as a matter of common knowledge, of what is meant by "overhead charges," as the items chargeable thereunder vary under different circumstances and with different individuals, and even with different auditors of the same individual, and it must be a matter of evidence in each case as to what constitutes such charges.

5. CONSTITUTIONAL LAW—*Evidence—Taxation—Licenses.*—The party who alleges that a tax law is unconstitutional because the tax is confiscatory, has the burden of proving the same by evidence upon which the court can base an intelligent and reasonable judgment, and not by arbitrary formulas and artificial rules.

Error to a judgment of the Circuit Court of the city of Norfolk affirming a judgment of the police justice, imposing a fine on the plaintiff in error for violation of an ordinance of the city of Norfolk.

*Affirmed.*

The opinion states the case.

*Robt. W. Shultice, W. W. Cook, R. H. Overbaugh* and *J. N. Sebrell, Jr.,* for the plaintiff in error.

*George Pilcher,* for the defendant in error.

Kelly, J., delivered the opinion of the court.

This writ of error brings in question the validity of a license tax assessed against the plaintiff in error for the year 1912 under an ordinance of the city of Norfolk, the material part of which is as follows:

"Any person who shall engage in the business of sending telegrams from the city of Norfolk to a point within the State of Virginia, or of receiving telegrams in the city of Norfolk, from a point in the State of Virginia, excepting, however, telegrams sent to or received by the government of the United States or this State, or their agents or officers, shall pay a license tax of $500.00, and in addition $1 per pole on each pole and $1 on every hundred feet of conduit in the streets or alleys of the city of Norfolk owned or used by said person . . . Nothing in this ordinance shall be construed as imposing a license tax on . . . interstate commerce."

The company refused to pay the tax, and a fine was imposed by the police justice of the city. The company took an appeal to the circuit court, where a jury was waived and all matters of law and fact were submitted to the court, and the judgment here complained of was rendered against the company. The errors assigned may be considered under two general heads.

1.   The local property of the company was assessed for taxation, and the taxes thereon were paid for the year 1912.   It appears from the evidence that the cost of inspection and supervision exercised by the city over the property was very small. It is contended on behalf of the company that, in these circumstances, the license fee is not maintainable as an inspection, or police, tax because excessive, and not maintainable as a revenue tax because, there being also an *ad valorem* tax for revenue, the license tax would result in double taxation.

We do not think the tax in question can be regarded as an inspection tax.   The city claims that the business of the company "cannot be reached by an *ad valorem* system" (Va. Const. sec. 170), and that this tax was a revenue measure and was charged for the privilege of doing business in the city.   This would seem to be the correct interpretation of the ordinance. (*Robinson* v. *Norfolk,* 108 Va. 14, 20, 60 S. E. 762, 15 L. R. A. (N. S.) 294, 128 Am. St. Rep. 934.)   It is true that the tax is graduated to some extent by the number of poles and feet of conduit owned by the company, but the ordinance operates upon all alike, and, if the city did not violate any constitutional inhibitions, it had the right to adopt its own method in fixing the amount.   The graduation of license taxes (not merely inspection taxes), according to amount or extent of business, either with or without a fixed minimum, is a common and widely approved practice.   Judson on Taxation, sec. 450; *Clark* v. *Titusville,* 184 U. S. 329, 22 Sup. Ct. 382, 46 L. Ed. 569; *Howland* v. *Chicago,* 108 Ill. 500; *St. Louis* v. *Bircher,* 7 Mo. App. 169;   Va. Tax Bill, sec. 36, Code 1904, p. 2214; *Ould & Carrington* v. *City of Richmond,* 23 Gratt. (64 Va.) 464, 14 Am. Rep. 139; *Petersburg* v. *Cocke,* 94 Va. 244, 248, 26 S. E. 576, 36 L. R. A. 432; *Postal Tel. Co.* v. *City of Norfolk,* 101 Va. 125, 43 S. E. 207 (ordinance substantially the same as in this case except that the fixed minimum was $250 instead of $500) ; *Commonwealth* v. *Werth,* 116 Va. 604, 609, 82 S. E. 695.

Nor is there any merit in the contention that a license tax for revenue, as this one clearly is, results in double taxation when the properties owned by the company and employed in its business have also been subjected to an *ad valorem* tax. This question is so well settled by the decisions in this State that we need not do more in this connection than to mention a few of them. *Commonwealth* v. *Moore & Goodsons,* 25 Gratt. (66 Va.) 951, 961; *Morgan's Case,* 98 Va. 812, 814, 35 S. E. 448; *Bradley* v. *Richmond,* 110 Va. 521, 524, 66 S. E. 872, and cases cited.

2. The second proposition upon which the company relies for a reversal of the judgment is that the license tax in question is an illegal burden on interstate commerce (the company doing a large interstate business), and is also confiscatory, and hence violative of the United States Constitution.

The soundness of this position depends, in our view of the case, solely upon the correctness and sufficiency of the method used by the company in its effort to demonstrate, as a matter of calculation and bookkeeping, that the tax is a burden on interstate commerce and confiscatory, as alleged. The calculation adopted by the company shows, according to figures taken from the evidence and employed in the petition, that the tax exceeded the net income from intrastate business at the Norfolk office for the year 1912 by the sum of $1.82, allowing nothing for interest on investment, and, according to figures taken from the evidence and employed in the reply brief for the company, the calculation shows a deficit of $13.00 if no interest be allowed on investment, and $48.55 if such interest be allowed. We shall not go further into the figures testified to by the company's witnesses than may be necessary to show the principles upon which these results depend.

The total interstate and intrastate receipts at Norfolk for 1912 were $47,136.74, and the intrastate receipts alone were $3,880.11. The total operating expenses at Norfolk for that year (not including taxes, depreciation or "overhead charges")

were $24,008.62. To arrive at the intra-state expense, the calculation in question assumes that the expenses of intrastate business at Norfolk bore the same proportion to receipts therefrom as the expenses of interstate business bore to the receipts from the latter business. Accordingly, the *per cent.* which $3,880.11 is of $47,136.74, namely, .08231 *per cent.*, is applied to $24,008.62, the total interstate and intrastate operating expenses, and the product, $1,976.11, is taken as the intrastate expense for the year. The principle of this method of calculation, in the absence of affirmative and satisfactory proof that the ratio is correct, has been condemned in a number of cases. The vice of the method consists in the assumption that the cost of intrastate business in relation to the company's revenue bears the same ratio as its interstate business to the total cost. There may be, for all that we can say from the evidence before us, a decided difference between the proportionate cost of the intrastate and the interstate business, depending upon the rates charged and other considerations, as to none of which is there any proof in the record. See *Wood* v. *Vandalia Railroad Co.,* 231 U. S. 1, 34 Sup. Ct. 7, 58 L. Ed. 97; *Knott* v. *Chicago, B. & Q. R. Co.,* 230 U. S. 474, 33 Sup. Ct. 975, 57 L. Ed. 1571.

Counsel for the company claim that a distinction between these cases and the one at bar is found in the fact that railroad traffic consists of a variety of articles differing in size and value, and other particulars which affect the rates, whereas the traffic of a telegraph company consists only of telegrams which are free from these differences. This distinction, however, while it would doubtless greatly simplify the evidence necessary to show the relative cost of intrastate and interstate telegraphic traffic, does not change the principle that the court cannot, in the absence of proof of the relevant facts, assume that the ratio of expense to revenue is the same as to each class of traffic.

But a still more serious objection to the method in question is to be found in other figures employed in the calculation. To further reduce the showing of revenue from the intrastate re-

ceipts, the company deducts therefrom the sum of $904.84 as "overhead charges chargeable to the Norfolk office." The only information contained in the record as to the meaning of this charge is that it is arrived at by taking the *per cent.* which $291,593.37, testified to as the total "overhead charges" of the company, is of $1,294,596.16, the total receipts, which is .2332 *per cent.*, and applying this to the total receipts at Norfolk. We are given no explanation of what is meant by "overhead charges," or of what particular items of expense they consist. It may be suggested that we should know, as a matter of common knowledge, what "overhead charges" mean in a business of this character, and, speaking in a general sense, this may be true. But it is certainly equally as much a matter of common knowledge that items of overhead charge, like charges to betterments, expense, depreciation, and some other titles of account, are more or less arbitrary and may vary with different companies, or even with successive auditors and bookkeepers in the same company. It is not meant by what is said here to question the integrity of the witness who testified to these figures, nor to suggest that these overhead charges may have been intentionally so kept as to unduly affect the showing of revenue from the Norfolk office. But we do not know of any legal or other fixed rule or standard for "overhead charges," and in the absence of any proof whatever as to what composed these charges in this case, we cannot say, as a matter of law, that the formula used in the above calculation represents a correct basis for charge against the Norfolk office. The company having assailed the constitutionality of the ordinance, was bound to maintain its case, not by arbitrary formulas and artificial rules, but by evidence upon which the court could base an intelligent and reasonable judgment. *Simpson* v. *Shepard,* 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, and cases cited *supra; Williams* v. *Talladega,* 226 U. S. 404, 33 Sup. Ct. 116, 57 L. Ed. 275.

The case of *Postal Tel. Co.* v. *Cordele,* 141 Ga. 658, 82 S. E. 26, is relied upon to support the correctness of the calculation used in the present case. The same general method appears to have been employed in the case cited, but it does not appear to have been challenged, and, for all that we can say from the report of the case, there may have been in the evidence sufficient relevant facts to meet the objections discussed above. The trouble here is not merely that a ratio or *per cent.* has been used, but that the ratio is not shown to be correct. It may have been otherwise in the Georgia case, but if not, and if the decision there can be considered as authority for the contention of the company in this case, then we are unable to follow it.

In our opinion there is no error in the judgment complained of, and it will be affirmed.

*Affirmed.*