𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

AMERICAN TOBACCO COMPANY V. CITY OF DANVILLE (No. 1)

*and*

AMERICAN TOBACCO COMPANY V. CITY OF DANVILLE (No. 2).

June 12, 1919.

1. STATUTES—*Construction—Meaning Clear.*—If a statute is clear rules of construction have no application.

2. TAXATION—*License—Purchasers of Tobacco—Ordinance of the— City of Danville.*—An original ordinance imposed a tax "on every person or firm for the privilege of conducting the business of purchasing leaf tobacco in the city of Danville, whether for manufacture, resale, or other purpose, except as a commission merchant." For many years under this ordinance defendant company had paid a license tax. An amended ordinance imposed an increased tax on "every person, firm, company, or corporation for the privilege of conducting the business of purchasing leaf tobacco in the city of Danville, whether on commission, for resale, or for other purposes." The only substantial difference between the two ordinances is that commission merchants were excepted from the original ordinance while they appear to be included in the amended ordinance. Neither expressly imposes a tax upon the business of manufacturing leaf tobacco; but the tax is, specifically, upon those engaged in the business of purchasing leaf tobacco, and there can be no doubt of its application to defendant company, which habitually purchased large quantities of leaf tobacco upon the open market in Danville, which it thereafter shipped to its various factories in this and other States for manufacture.

3. TAXATION—*Licenses—Purchasers of Tobacco—Ordinance of the City of Danville.*—It was urged that an ordinance imposing a license tax upon purchasers of tobacco in the city of Danville was in conflict with that clause of the charter which authorized the city council annually "to lay and collect taxes on the real and personal property in said city according to its value."

*Held:* That it was clear that this clause did not affect the question. Sections 3 and 4 of the charter authorizing license taxes are the sections which apply, and these sections confer upon the

Syllabus.

city of Danville a general grant of power to tax occupation or business for revenue. Having this general power, its ordinances relating thereto, unless that power is exceeded, have the same authority as an act of the legislature.

4. TAXATION—*Licenses—Purchasers of Tobacco—Ordinance of the City of Danville.*—It was urged against an ordinance imposing a license tax on the purchase of tobacco that the purchase of tobacco is a mere incident to the right to manufacture tobacco, and that the defendant company having this right could not be required to pay a license for purchasing tobacco which it proceeds to manufacture. While every manufacturer has this incidental right, it does not necessarily follow that it can exercise this right in Danville. A more correct statement of this situation is, that its habitual purchase of leaf tobacco in Danville, in competition with other purchasers thereof, is not a necessary incident to its manufacture of tobacco alsewhere in Virginia, as well as in North Carolina and Kentucky. It is, however, promotive of and advantageous to that business. It was in evidence that the business of purchasing tobacco is a separate and distinct occupation, and there are persons engaged in it who are not engaged in the manufacture of tobacco.

5. LICENSES—*Increase of Rate During Current Year.*—A license or occupation tax upon business does not constitute a contract, and where a city has full power to tax an occupation, it may increase the rate, on the particular person engaged therein, at any time before the expiration of the period for the enforcement of the tax, even if such increase be made after the tax first levied has been paid.

6. TAXATION—*Consent of Taxpayer—Increase of Amount.*—The payment of taxes is a public duty and the power of the government to levy them is a public right which does not depend upon the consent of the taxpayer. The amount thereof, unless lawfully limited, must always remain within the discretion of the taxing authority, to be varied and increased from time to time as the public necessities may require.

7. LICENSES—*Power of Municipalities—Segregation Act.*—Repeals by implication are not favored, and although the segregation act has been in effect since 1915, the cities of the Commonwealth have continued to raise a very large part of their revenues from license taxes, and there is no basis in any of the recent Virginia statutes for the contention that because the capital of manufacturers has been segregated and subjected to a limited *ad valorem* tax, State and local, the General Assembly intended thereby to subvert the local license tax system hitherto prevailing.

8. CONSTITUTIONAL LAW—*Licenses—Equal Protection of the Laws.*—It was argued that an amended ordinance imposing an in-

creased license tax upon purchasers of tobacco was unenforceable because, in its application, the equal protection of the laws had been denied to the defendant company, contrary to the fourteenth amendment. The basis for this claim was that the commissioner of revenue was said to have stated that stated that the company was the only purchaser in the city that had been assessed with this additional license tax, and the reason it had been so assessed was because it had sought relief from an erroneous assessment.

*Held:* That the trial court rightly excluded the evidence of these alleged statements of the commissioner of the revenue because it was his official duty to make the assessment in accordance with the provisions of the ordinance, unless the ordiance was itself illegal, and because his statements could not affect the legal questions involved. It further appeared that all of the purchasers of leaf tobacco in Danville subject to the license according to its terms had been assessed with the omitted additional tax, that there has been no discrimination in this respect against the company.

9.   LICENSES—*What Covered by License—Incidental Things.*—When under the taxing power a license to conduct a certain business is issued by a municipality, such license confers the right to do all those things which are necessarily and usually incident to such business, and in the absence of clear specific and undoubted legislative authority therefor, the doing of such incidental things cannot be subjected to any additional license tax.

10.  LICENSES—*What Covered by License—Incidental Things—License to Purchase Tobacco.*—One who has been licensed to purchase tobacco in the city of Danville and does so, in loose piles as it lies upon the floor of the warehouse, has the incidental right under that license to pack such tobacco into hogsheads for its preservation, use and transportation. Such preservation by its owner of his private property is not the conduct of a business which can be subjected to an additional license tax.

Error to a judgment of the Corporation Court of city of Danville, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Jas. E. Cannon* and *Samuel A. Anderson,* for the plaintiff in error.

*E. Walton Brown,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

These cases, while depending upon different principles, were submitted together, and hence will be disposed of in one opinion.

1. The pertinent facts in Case No. 1 may be thus stated: The city of Danville filed its motion for judgment (Acts 1916, p. 729) against the American Tobacco Company for the recovery of $5,724.26, alleged to be the balance due on the omitted and corrected assessment of its license tax on the business of purchasing leaf tobacco in that city for the year ending April 1, 1917, and there was a judgment in favor of the city, of which the company is here complaining. Danville has been for many years a very large tobacco market. Large manufacturers of tobacco have for years had their agents there engaged in the business of purchasing leaf tobacco. The American Tobacco Company had been a large purchaser. For more than twenty years the city has annually imposed a license tax on the business, and until it refused to pay the increased tax here involved, the company has always paid every similar tax assessed against it. Section 56 of the license tax ordinance for the year beginning May 1, 1916, approved on April 29, 1916, imposed a tax of $10 on the first $1,000 of purchases of leaf tobacco, and five cents on each $100 of purchases in excess of the first $1,000 upon "every person or firm for the privilege of conducting the business of purchasing leaf tobacco in the city of Danville, whether for manufacture, resale or other purpose, except as a commission merchant." The licensee was required to report purchases on October 1st and April

1st.  On October 1, 1916, the company reported purchases for the preceding six months amounting to $98,384.44, and on April 1, 1917, for the preceding six months of $665,-849.75, and the assessments at five cents on the $100 were made and the tax thereon paid.  For many years the city of Danville has also assessed the leaf tobacco held by the company and other owners thereof in the city of Danville on the first of February of each year and collected taxes thereon at the rate imposed on other tangible personal property.  It had done so for the years 1916 and 1917, but by reason of the segregation act of 1915 (Laws 1915, C. 85) and the classification of "materials on hand," held by manufacturers as invested capital, and hence taxable as intangible personal property, the local authorities were confronted with a very large deficit on account of taxes thus erroneously assessed and collected of this and other owners of leaf tobacco, as tangible personal property.  So that in January, 1917, the finance committee of the council recommended an amended ordinance increasing the license tax on purchasers of leaf tobacco from five cents to eighty cents on every $100 of purchases, and this amendment passed through various stages until it had been enacted and approved by the mayor March 15, 1917.  By its terms it became immediately effective.  This amended ordinance provided that credit should be given for amounts paid for such license privilege under the original ordinance.  The commissioner of the revenue ignored this amended ordinance, and assessed the company on April 1, 1917, after the new ordinance had become effective, with a license tax at the rate provided for by the original and repealed ordinance; that is, with five cents on every $100 of purchases.  Later, however, on March 29, 1918, the commissioner corrected his assessment so as to make it accord with the amended ordinance.  Corrections for omitted local license taxes are expressly authorized by section 508 of the Code,

as amended (Acts 1916, p. 826). Payment thereof having been refused, this litigation is the result.

The company denies its liability upon several grounds.

[1, 2]    (a) It claims that the amended ordinance does not, by its terms, apply to it. To sustain this proposition, many authorities are cited, which announce familiar and well-settled rules for the construction of statutes, the meaning of which is obscure. A sufficient reply to this argument is that if the statute is clear these rules do not apply. In this case, while the original ordinance imposed the tax "on every person or firm for the privilege of conducting the business of purchasing leaf tobacco in the city of Danville, whether for manufacture, resale or other purpose, except as a commission merchant," the amended ordinance imposed it on "every person, firm, company or corporation for the privilege of conducting the business of purchasing leaf tobacco in the city of Danville, whether on commission, for resale, or for other purpose." In our view, the only substantial difference between the two ordinances is that commission merchants were excepted from the original ordinance while they appear to be included in the amended ordinance. Neither expressly imposes a tax upon the business of manufacturing leaf tobacco; but the tax is, specifically, upon those engaged in the business of purchasing leaf tobacco, and we have no doubt of its application to the company, it being admitted that it habitually purchased large quantities of leaf tobacco upon the open market in Danville, which it thereafter shipped to its various factories in this and in other States for manufacture.

[3]    (b) It is urged that the ordinance is in conflict with the charter of Danville, and that clause of the charter which authorizes the city council annually "to lay and collect taxes on the real and personal property in said city according to its value," seems to be relied upon. It is clear that this clause does not affect the question. Sections 3

3

and 4 of the charter are the sections which apply. Section 3, so far as it is necessary to quote it, provides: "The council may grant or refuse licenses, and may regulate the taxes to be paid on such licenses * * * to agents for the sale or renting of real estate, and all other business which cannot be reached by the *ad valorem* system, under any of the preceding sections * * * " Section 4 contains this language, omitting such as does not appear to be pertinent: "The council may impose a tax on all corporations located in the city, or having their principal office therein * * * It may also impose a tax on * * * traders * * * manufacturers * * * and agents for the transaction of any taxable business; and the council may impose a tax upon any other business, trade, person or employment, whether such business, trade, person or employment be herein specially enumerated or not, and whether any tax be imposed thereon by the State or not. As to all such business, trade, persons, or employment, the council may lay a direct tax, or may require a license therefor, as may be most expedient and proper, under such regulations as it may prescribe and levy a tax thereon."

We think it unnecessary to say more than that these sections confer upon the city of Danville a general grant of power to tax occupations or businesses for revenue. *Town of Danville* v. *Shelton*, 76 Va. 325; *Newport News, Etc., Co.* v. *Newport News*, 100 Va. 157, 40 S. E. 645; *Woodall* v. *Lynchburg*, 100 Va. 318, 40 S. E. 915; *Norfolk* v. *Griffith*, 102 Va. 115, 45 S. E. 889; *Gordon* v. *Newport News*, 102 Va. 649, 47 S. E. 828; *N. & W. Ry. Co.* v. *Suffolk*, 103 Va. 498, 49 S. E. 658; *Scottish Union, Etc., Co.* v. *Winchester*, 110 Va. 451, 66 S. E. 84; *Bradley* v. *Richmond*, 110 Va. 521, 66 S. E. 872; *Hardin* v. *Radford*, 112 Va. 547, 72 S. E. 101; *Postal Telegraph Co.* v. *Norfolk*, 118 Va. 455, 87 S. E. 555. Having this general power, its ordinances relating thereto, unless that power is exceeded, have the same authority as an act of the legislature.

[4]    It seems late to question the authority of the city to levy a tax upon the business of purchasing leaf tobacco, because this has been undoubted for more than twenty years; indeed, if it were an open question, there would seem to be no reason to doubt that the city council has the right to make such a classification and assessment.    It is urged for the company in this case that the purchase of tobacco is a mere incident to the right to manufacture tobacco, and that the company having this right cannot be required to pay a license for purchasing the tobacco which it proposes to manufacture.    While every manufacturer has this incidental right, it does not necessarily follow that it can exercise this right in Danville.    A more correct statement of this situation is that its habitual purchases of leaf tobacco in Danville, in competition with other purchasers thereof, is not a necessary incident to its manufacture of tobacco elsewhere in Virginia as well as in North Carolina and Kentucky.    It is, however, promotive of and advantageous to that business.    One of the company's witnesses testified that the business of purchasing tobacco is a separate and distinct occupation, and that there are persons engaged in it who are not engaged in the business of manufacturing tobacco.

[5]    As far back as *Danville* v. *Shelton, supra* (1881), the business of purchasing leaf tobacco has been recognized as a business subject to a license tax.    It is thus taxed also in North Carolina.    *State* v. *Irvin,* 126 N. C. 989, 35 S. E. 430.    There can be no doubt whatever of the original power of the city council, under the charter, to impose a license tax upon the business.    The more difficult and vital question here involved is whether the city had the right to increase the rate during the current year, 1916-17.    It is everywhere agreed that a license or occupation tax upon business does not constitute a contract, and this is said in 25 Cyc. 627: "Where a city has full power to

tax an occupation, it may increase the rate, on the particular person engaged therein, at any time before the expiration of the period for the enforcement of the tax, even if such increase be made after the tax first levied has been paid."

In *State* v. *Worth,* 116 N. C. 1010, 21 S. E 205, it is said: "It would be 'sticking in the bark' to so construe the law as to restrict the authority to levy to the particular date (January 1st) mentioned in the act. The city may every year, either on or within a reasonable time after the day mentioned, alter by increasing, diminishing or abrogating this specific levy on any of the subjects comprehended under the terms used in the Constitution, but it was not intended that the right to exercise the power should be limited to a particular day or that the city should be deprived of revenue upon any taxable trade because the authorities failed to formally declare on the 1st of June whether each specific levy should be increased, diminished or discontinued for the ensuing year."

In *Western Union Telegraph Co.* v. *Harris* (Tenn.), 52 S. W. 748, the Court of Chancery Appeals of Tennessee held that an increase of a privilege tax from $4,000 to $5,-000 per annum was within the power of the General Assembly, although the company had paid the $4,000 tax on April 20, 1895, for the privilege from April 9, 1895, to April 8, 1896, and the act making the increase was not passed until June 14, 1895, effective July 28, 1895, and that such payment of the $4,000 did not create a contract between the State and the company that it was to be exempt during that year from the imposition of any other license or privilege tax.

*Kelly* v. *Dwyer,* 7 Lea (Tenn.) 193, is another case in which an increase of a State license tax during the current year is upheld.

In *Savannah* v. *Crawford,* 75 Ga. 35, it is held that the city of Savannah, after having collected a specific license tax of a merchant, might amend the ordinance and double the tax during the current year.

[6]   While the power is a large one and may be liable to serious abuse, at the same time, upon principle, this doctrine appears to be perfectly sound and necessary in the public interest—certainly necessary so far as the General Assembly is concerned. The payment of taxes is a public duty, and the power of the government to levy them is a public right which does not depend upon the consent of the taxpayer. The amount thereof, unless lawfully limited, must always remain within the discretion of the taxing authority, to be varied and increased from time to time as the public necessities may require.

[7]   (c) It is claimed that the ordinance is contrary to the declared public policy of the Commonwealth, and therefore void. The chief basis for this claim is that in the preamble of the segregation act (Acts 1915, p. 119) it is declared that the interests of the Commonwealth would be promoted by putting into operation at the earliest date practicable a complete segregation of the subjects of taxation so as to specify and determine upon what subjects State taxes, and upon what subjects local taxes, may be levied. A careful consideration of all that is said by the learned counsel upon this subject fails to convince us that the legislature had any intention of abridging or limiting the pre-existing. charter rights of the various municipalities of Virginia relating to the levying of such local license tax as is here involved. The system is well established and has been for many years. The. cities would be seriously hampered in meeting their existing obligations, which were in a measure based upon their powers of taxation, if the right to levy license taxes should be altogether denied them. It is conceded that repeals by implication are not favored,

and so far as we are informed, although the segregation act has been in effect since 1915, the cities of the Commonwealth have continued to raise a very large part of their revenues from license taxes, and we find no basis in any of the recent Virginia statutes for the contention that because the capital of manufacturers has been segregated and subjected to a limited *ad valorem* tax, State and local, the General Assembly intended thereby to subvert the local license tax system hitherto prevailing.

[8]    (d) It is argued that the amended ordinance is unenforceable because, in its application, the equal protection of the laws has been denied to the company, contrary to the fourteenth amendment of the federal Constitution. The basis for this claim is that the commissioner of the revenue is said to have stated that the American Tobacco Company was the only purchaser of leaf tobacco in the city of Danville that had been assessed with this additional license tax which is the subject of this controversy, and that the reason it had been so assessed was because it had sought relief from an erroneous assessment of property taxes (referring to the assessment for the year 1916 of the leaf tobacco of the company as tangible property, which has been held to be illegal and erroneous because properly taxable in the city of Richmond as intangible property), and that the tax officers were making this assessment merely because the company had asserted its legal rights in its efforts to obtain redress against such erroneous assessments. The trial court rightly excluded the evidence of these alleged statements of the commissioner of the revenue, because it was his official duty to make the assessment in accordance with the provisions of the ordinance, unless the ordinance was itself illegal, and because his statements could not affect the legal questions involved. It further appears that all of the purchasers of leaf tobacco in Danville subject to the license according to its terms have

been assessed with the omitted additional tax; that there has been no discrimination in this respect against the company; and that this case is a test case for the determination of the validity of the ordinance.   There is nothing in the record to justify us in finding that there has been any discrimination against the company, or any concerted plan or scheme to deny it the equal protection of the laws, or to impose any burden upon it which is not also imposed upon all others similarly situated. *Union Tanning Co.* v. *Commonwealth,* 123 Va. 610, 96 S. E. 780.   This being true, the company has not been denied "the equal protection of the laws."   17 R. C. L. 495; *Singer Mfg. Co.* v. *Wright,* 97 Ga. 114, 25 S. E. 249, 35 L. R. A. 497.

We conclude, therefore, that there is no error in the judgment of the trial court holding the company liable for this tax.

2. The pertinent facts in Case No. 2 are these:   The city of Danville undertook, for the fiscal year ending April 30, 1918, to impose a tax upon "the business of packing leaf tobacco in hogsheads, tierces or other containers," and the American Tobacco Company having paid its license tax for the two preceding years upon the business of purchasing tobacco under the original ordinance hereinbefore referred to, and having also paid the license tax under this ordinance for packing tobacco, made its motion for relief against each of these assessments, alleging them to be erroneous.   The relief prayed for as to the license tax for purchasing tobacco was denied, and it appears from what we have already said that we are of opinion such refusal was fully justified.

The trial court, however, granted the other relief asked for, and ordered the city to refund to the company the sum of $1,317.10, which it adjudged to have been illegally assessed against the company as a license tax for conducting

the business of packing leaf tobacco in the city of Danville for the fiscal year ending April 30, 1918. The city alleges cross-error as to this ruling, and that constitutes the only question now to be considered.

The facts are: That the company "purchases leaf tobacco in the city of Danville, which it subsequently manufactures at its various plants, none of which are located in the city of Danville, and that it does not purchase such tobacco in the city of Danville except for such purpose; that it does prize tobacco into hogsheads in said city in order to store and handle the tobacco which it has purchased in Danville for its own uses, but prizes no tobacco into hogsheads or packages for any other person, firm or corporation." The company claims that this prizing or packing of its own tobacco which it has thus purchased into hogsheads for its preservation and shipment is a mere incident to its business of purchasing tobacco, and that under its license as a purchaser of tobacco in Danville it has this incidental right, and that the city has no power or authority to impose any additional burden.

A kindred question was considered recently by this court in *Norfolk* v. *Griffin,* 120 Va. 524, 91 S. E. 640, where it is decided that the State having imposed a license tax upon general contractors, the city of Norfolk, under its general taxing power, had no authority to make a different classification, sub-dividing that business for the purpose of imposing separate license taxes upon contractors for the several kinds of work entering into the general construction business. There the city undertook to impose separate license taxes upon contractors for brick work, for plastering, for roofing and metal work, for cement and concrete work, for painting and wall decorating, and for stone masonry. This court held that the ordinance making these sub-divisions was invalid, and that the city could impose only one license tax on such contractors in accordance with

the classification made by the General Assembly. That case is instructive, but not decisive of the case under consideration, because the State has not imposed a license tax either upon persons engaged in the business of purchasing tobacco or upon those engaged in the business of packing tobacco into hogsheads and other containers. In that case it is said: "Another general rule universally ¡recognized is, that delegated corporate powers to municipalities, particularly grants of power that are out of the usual range and that may result in public burdens, or which in their exercise touch the right of liberty or property, or any common-law right of the citizen, must be strictly construed, and when in such construction there is any ambiguity or doubt as to the extent of the power, it is to be determined in favor of the State, or general public, and against the State's grantee."

Judge Cooley (Cooley on Taxation [3d ed.], p. 1103) says that: "The general rule that the powers of a municipal corporation are to be construed with strictness, is peculiarly applicable to the case of taxes on occupations." And that "a city cannot divide a single taxable privilege and require a separate license for each of the elements of right that accrue to citizens thereunder."

In 25 Cyc. 609, it is stated that "when a license to do a general business has been exacted, another license cannot be imposed for doing a particular act or series of acts constituting an integral part of such general business;" referring to *Gambill* v. *Endrich*, 143 Ala. 506, 39 So. 297, which states the same general rule, but holds that the business of selling liquors is an exception to that general rule, and that a city had the power in that business to regulate and to require of a licensed retailer an additional license for selling beer at wholesale.

In 17 R. C. L. 527, it is said: "Illustrating the application of the general rule, where a municipality is simply

given the power to impose a license tax on business, it cannot divide such business into its constitutent elements, parts or incidents, and levy a separate tax on each or any element, part, or incident thereof."

In the note to *Southern Express Co.* v. *R. M. Rose Co.,* 124 Ga. 581, 53 S. E. 185, 5 L. R. A. (N. S.) 619, it is said: "It is a rule very generally followed that a municipality acting under charter power to tax a business cannot levy a tax upon the particular elements or operations which go to make up the business."

In *Commonwealth* v. *Shoppenhorst Bros.,* 105 Ky. 259, 49 S. W. 26, it is held that under a general power to license laundries and also towel supply companies, a towel supply company which had secured its special license cannot be required to secure a laundry license in order to have the privilege of laundering towels, the business of laundering towels being a necessary element of the business for which the licensee had already paid one license.

*Savannah* v. *Dehoney,* 55 Ga. 33, holds that a city has no right to impose a tax upon each vehicle employed by the keeper of a public stable who had already paid a stableman's license tax, if the carrying of passengers and baggage for hire was a part of his legitimate business and incident thereto as the keeper of a public stable.

*Vosse* v. *Memphis,* 9 Lea (Tenn.) 294, holds that a city has no right to tax for the separate privilege of keeping a game or fish store, or of selling poultry, under a charter power to license meat stores, and could not require a proprietor of a meat store to pay a special license tax for selling game and poultry.

In *Hotelling* v. *Chicago,* 66 Ill. App. 290, it is held that under the power to require a license to conduct a second-hand store, a city has no right to require a separate license for each article in which the store dealt.

In *Tuscaloosa* v. *Holczstein,* 134 Ala. 636, 32 So. 1007, it

is held, where the charter authorized the licensing of milliners and also any person or firm engaged in merchandising or carrying on any business of a mercantile character, that an ordinance imposing a tax in addition to the merchant's tax upon a merchant selling millinery goods in completed form is void, as selling millinery is but one branch of the business of a general dry goods merchant.

In *Southern Express Co.* v. *R. M. Rose Co., supra*, it is held that a municipal ordinance imposing a license tax upon railroad and express companies for the privilege of delivering or causing the delivery in the city of packages containing wine, whiskey, beer or intoxicating liquors, is invalid as the duty to make such deliveries is incidental to the business of such common carrier.  Note to *Newport* v. *Fitzer*, 21 L. R. A. (N. S.) 280.

[9]  When under the taxing power a license to conduct a certain business is issued by a municipality, such license confers the right to do all those things which are necessarily and usually incident to such business, and in the absence of clear, specific and undoubted legislative authority therefor, the doing of such incidental things cannot be subjected to any additional license tax.

[10]  Both upon reason and authority it seems to us very clear indeed that one who has been licensed to purchase tobacco in the city of Danville and does so, in loose piles as it lies upon the floor of the warehouse, has the incidental right under that license to pack such tobacco into hogsheads for its preservation, use and transportation.  Indeed, we cannot conceive of a more certain and obvious right, clearly incidental to the purchase and consequent ownership of leaf tobacco, than the right to pack it into hogsheads or other containers to preserve it from loss and deterioration.  To hold that such preservation by its owner of his private property is the conduct of a business which can be subjected to a license tax would be not only to dis-

regard the accepted meaning of the language of the charter authorizing the taxation of business avocations, but also to impair the right of private ownership of property and to ignore the rule that, unless restrained in the public interest, one may do what he will with his own. The packing of its own tobacco is a necessary incident to the business of purchasing tobacco for which the company was already licensed. The trial court rightly so held.

*Affirmed.*