

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann
XXX~~XXXXXXXXXX~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-3625

Re: Date of accrual and method of computation under Article V, House Bill No. 8, 47th Legislature, of new occupation taxes, levied upon persons or corporations owning or operating certain utility plants in incorporated towns or cities of more than one thousand inhabitants and less than two thousand, five hundred inhabitants, and additional such taxes in incorporated cities or towns of higher population brackets; (b) liability for such taxes of persons or corporations owning or operating utility companies in incorporated towns or cities of exactly one thousand inhabitants.

Your letter of May 28, 1941, submits for our opinion the following questions which we quote therefrom:

"Article No. 5 of House Bill No. 8 of the Forty-seventh Legislature amends Article 7060 R. C. S. 1925 by providing that the parties or concerns shall make quarterly, on the first day of January, April, July and October of each year, a report to the Comptroller of Public Accounts, showing the gross amount received from such business done in each incorporated city or town in this State in the payment of charges for such gas, electric lights, electric power, or water for the quarter next preceding; provides for a tax of .44% on gross receipts of gas, water, light and power companies in towns of more than 1,000 inhabitants and less than 2500 population; another

bracket on receipts from towns of over 2500 and less than 10,000 population; and, a bracket of over 10,000 population. This bill became effective as of May 1, 1941.

"I will appreciate your opinion on the following questions:

"1. Will the tax on receipts from the towns in the smaller bracket, which is new, for the months of May and June be computed on 2/3 of the receipts for the quarter ending March 31, 1941, (2/3 of the first quarter is used for the reason that May and June would be 2/3 of the quarter beginning April 1st).

"2. Tax on receipts from the towns in the two upper brackets was paid for in tax payment for the quarter beginning April 1st. Will the increased tax rate apply on such receipts to the towns in the upper brackets for the months of May and June?

"3. Will the receipts from the operations in towns of an even 1,000 and 2500 population be taxable? (You will note the law reads as to towns over 1,000 to 2500 and again over 2500 to 10,000)."

The act above cited levies an occupation tax, based upon gross receipts, upon the described public utility companies or plants located in incorporated towns or cities of more than one thousand inhabitants and less than two thousand five hundred inhabitants, at the rate of .44 of one per cent of its gross receipts for the preceding quarter. This tax is a new levy as the tax levied by Article 7060, Revised Civil Statutes, prior to its amendment by the act under consideration, did not levy a tax in cities or towns containing less than two thousand five hundred inhabitants. Additionally, the act of the 47th Legislature now before us, increased the rate of taxation in incorporated towns or cities located in the same population brackets as the amended act.

Thus, while strictly speaking, the amending act levied a new tax and increased an existing tax, for all practical purposes and within the contemplation of the legal principles hereinafter discussed, both phases of this tax levy will be considered together. The only distinction which may be pointed to is that the companies, now for the first time made subject to a tax, would not have filed the preceding quarterly report of

gross receipts, upon which the tax is computed, while companies here-tofore subject to a lower tax, would nevertheless have filed such quarterly report. But the controlling issue here is whether or not in each instance, that is as to the new taxes as well as to the additional taxes, such tax levies become due and payable upon the effective date of the act, i.e., May 1, 1941, or upon the first day of the first entire quarter to succeed said effective date, namely, July 1, 1941. This question being determined, the mere method of computing and calculating the tax will easily follow therefrom.

Upon this question it may be generally stated that the power of imposing an excise tax is not exhausted when once exercised, but the tax may be increased during the year if exigencies demand increased expenditures. The tax may be increased at any time before the expiration of the period for the enforcement of the tax, although the tax as first fixed has been paid. 37 C. J. 189 (Licenses, Section 40), Cooley on "Taxation", Vol. 4, Section 1715 (4th Ed.); Patton v. Brady, 184 U. S. 608, 46 L. Ed. 713, 22 S. Ct. 493; Williams v. City of Waynesboro, 111 S. E. 47; American Tobacco Co. v. Danville, 99 S. E. 733; State v. Galveston, H. & S. A. Ry. Co., 97 S. W. 71; Texas Company v. Stephens et al., 100 Tex. 628, 103 S. W. 481.

But while the general principle of taxation announced by the authorities cited cannot be controverted it may be speciously argued that such recognized principle has no application to the instant act because same specifically provides that the person or corporation subject thereto "shall make quarterly, on the first day of January, April, July, and October of each year, a report to the Comptroller", showing the gross amount received from such business for the quarter next preceding and "at the time of making said report . . . shall pay to the Treasurer of this State an occupation tax for the quarter beginning on said dates." . . . ; hence, the act not becoming effective on the first day of the current quarter, i.e., April 1, 1941, it was intended by the Legislature that no report and tax payments would be required until the first day of the quarter next succeeding the effective date of the act, which would be July 1, 1941.

Although this distinction of the instant act from the tax measures involved in the cases supporting the above rule, may, at first view, appear valid, we submit that the decision of the Supreme Court of Texas in the case of Texas Company v. Stephens, et al, supra, will upon close analysis and comparison of the tax measure under consideration therein

with the instant act, convincingly refute and negate this distinction and argument. Insofar as pertinent here, this decision involved the effective date of Chapter 148, page 358, Acts, Regular Session, 29th Legislature, generally called the "Kennedy Bill", especially Sections 9, 11, 12 and 13 thereof, levying certain occupational excises.

Section 9 of the cited Act, levying a tax on an annual basis of two per cent of gross receipts, upon the business of selling at wholesale, oil and other allied products, provided that said tax "shall be paid to the State Treasurer quarterly, and every such person, agent, association of persons or corporation so owning, controlling or managing such business shall, on or before the 1st day of April, and quarterly thereafter, report to the Comptroller under oath of the president, treasurer, superintendent or some other officer of said corporation or association or some duly authorized agent thereof, the amount received by them from such business in this State."

Section 11 of the Act levied an occupational excise upon the business of leasing, renting, operating, hiring or charging mileage for the use of various classes of cars, including tank cars, and provided that the person or corporation so engaged "shall on or before the 1st day of April and quarterly thereafter, through its superintendent or other chief officer, or authorized agent, file with the Comptroller of Public Accounts, a report, under oath, showing the amount of gross receipts from such rentals or mileage or other sources of revenue, for the preceding three months, and shall pay a tax of two per cent on their gross receipts from all rentals or mileage or other sources of revenue received from any railway companies or other persons or from all other sources within this State."

Sections 12 and 13 of the Act, levying, respectively, occupation taxes upon the businesses of operating pipelines and producing oil, are even more comparable, as regards the accrual, by quarter, of the taxes levied, to the instant act than are the preceding sections. Both Section 12 and 13 were substantially identical in this regard, providing that each person or corporation engaged in such business "shall on or before the 1st day of April of each and every year, and quarterly thereafter, through its superintendent, president, secretary or other authorized agent, file with the Comptroller a report under oath, showing the amount of gross receipts . . . during the three months next preceding; said . . . companies, at the time of filing the required report shall pay to the Treasurer of the State of Texas" the stated tax.

This Act became effective April 17, 1905, on a date too late for the companies affected thereby to report and pay the taxes levied, on the first day of the quarter April 1, 1905, just as in the instant question, the effective date of the Act was May 1, 1941, which was a date subsequent to the first day of the quarter beginning April 1, 1941, on which date a report was required to be made and a tax paid. Under each of the acts now under comparison another report and tax payment was expressly required upon the first day of July of the respective years. But with reference to the contention of the taxpayer that no tax was due and owing until said first day of July, 1905, under these four sections of the "Kennedy Bill", the Supreme Court of Texas, in the cited case, ruled adversely as follows:

"The contention that the Kennedy bill did not take effect before July 1, 1905, so as to impose liability for the taxes for such part of the preceding quarter as elapsed after April 17th of that year cannot be sustained. The bill was passed with the emergency clause and by the requisite vote to put in force upon its passage and, having been approved on April 17th, it went into effect at once as a law. Of course, it is true, as contended, that the time when taxes became due under it is to be ascertained from the intention manifested by its provision. It fixes the first quarter as beginning April 1st, but, its passage through the legislature having been delayed until that time had passed, it could not operate during the interval from April 1st to April 17th. The intention was clearly manifested, however, by its history and by the emergency clause, that it should become effective as a revenue producing measure as soon as it could be enacted, and there is nothing in the facts stated to prevent that intention from controlling."

The instant measure, like the "Kennedy Bill," was passed with the emergency clause and by the requisite vote to make it effective immediately upon its passage and approval; and, similarly, we think the intention was manifest from the legislative history of this Act, and the social security program which it was designed to relieve, instanter, and the contemporaneous temper of the times, that the Legislature intended that the revenues expected to be derived from this measure levying new and additional taxes, should begin to flow into the State Treasury immediately upon the effective date of the act, towit, May 1, 1941.

It is a corollary from this conclusion that the occupation taxes due and owing from the subject companies on May 1, 1941, would be computed on

the basis of two-thirds of the gross receipts for the preceding quarter (the quarter ending March 31, 1941), at the rate of taxation fixed in the Act, because only two-thirds of the current quarter remained after the Act became effective (May and June). The utility companies located in incorporated cities or towns of more than one thousand inhabitants and less than two thousand, five hundred inhabitants will be, it is true, for the first time required to file a report of their gross receipts for the preceding quarter ending March 31, 1941. But if our conclusion is tenable that such companies may be lawfully required to pay a new tax as of May 1, 1941, we can find no legal obstacle to requiring that such report of gross receipts for the preceding quarter be filed now, in order that the tax may be properly computed. We think such result would necessarily follow from the principles and authorities above discussed.

As regards the owners or operators of those utility plants in incorporated cities or towns of the higher population brackets, against whom a higher tax has been levied, such tax will, of course, be computed on the basis of the report of gross receipts for the preceding quarter (ending March 31, 1941), which such persons or corporations have, presumptively, already filed.

Answering your third question, we are reluctantly but inescapably constrained to advise you that incorporated cities or towns, containing exactly one thousand inhabitants, no more and no less, do not fall within the taxable population brackets fixed by Article V, House Bill No. 8, 47th Legislature, and consequently an individual, company, corporation or association owning, operating, managing or controlling any gas, electric light, electric power or water works, or water and light plants, located within such incorporated town or city, would not be subject to the occupation tax levied thereby.

The Act provides that the described individual, company, corporation or association "at the time of making said report for any such incorporated town or city of more than one thousand inhabitants and less than two thousand, five hundred inhabitants, according to the last Federal Census next preceding the filing of said report, shall pay to the Treasurer of this State an occupation tax," etc.

It will be noted that this first population bracket does not begin with an incorporated city or town of one thousand inhabitants or more, but,

on the contrary, expressly refers to an incorporated city or town of <u>more</u> than one thousand inhabitants. Therefore, from the plain English of the matter, an incorporated city or town of one thousand inhabitants or less would not be covered by the Act.

With reference to cities and towns of exactly two thousand, five hundred inhabitants, embraced in your third question, we are advised that although certain towns and cities exist having exactly two thousand, five hundred inhabitants, none of such towns or cities are incorporated, and hence do not fall within the purview of the statute here involved. Hence, we would not at this time attempt to answer this phase of your inquiry.

Trusting the foregoing fully answers your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Pat M. Neff, Jr.
Assistant

APPROVED JULY 3, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
By
Chairman