MANN, Attorney General, et al. v. GULF
STATES UTILITIES CO.

No. 9292.

Court of Civil Appeals of Texas. Austin.

Dec. 9, 1942.

Rehearing Denied Dec. 30, 1942.

Gerald C. Mann, Atty. Gen., and Cecil C. Rotsch and Walter R. Koch, Asst. Attys. Gen., for appellants.

Orgain, Carroll & Bell and Benjamin D. Orgain, all of Beaumont (Will E. Orgain, of Beaumont, of counsel), for appellee.

BLAIR, Justice.

This litigation arose as follows: Art. V of House Bill No. 8, Acts 1941, c. 184, Vernon's Ann.Civ.St. art. 7060, amended Art. 7060 of the Revised Statutes in two particulars: (1) Increased the rate of tax theretofore levied upon the gross receipts of utilities companies from cities of more than 2,500 population; and (2) for the first time levied a tax upon the gross receipts of such companies from towns having a population of between 1,000 and 2,500; which amended act became effective May 1, 1941. Both before and after amendment Art. 7060 provided that such utilities companies "shall make quarterly, on the first day of January, April, July, and October of each year, a report to the Comptroller under oath * * * showing the gross amount received from such business," and "at the time of making said report, shall pay to the Treasurer of this State an occupation tax for the quarter beginning on said date an amount equal to [certain percentages] of said gross receipts, as shown by said report * * *." At the time the amended act became effective, on May 1, 1941, appellee had paid the tax on April 1, 1941, for the quarter ending on July 1, 1941, based upon its report of gross receipts from cities of over 2,500 population for the months of January, February, and March, 1941, and since no tax was levied prior to the time the amended act became effective, on May 1, 1941, on gross receipts from towns of between 1,000 and 2,500 population, no report therefrom had been made.

The Attorney General and the Comptroller construed the amended act as being effective on May 1, 1941, and as providing that the tax imposed should be due and payable on that date for the succeeding months of May and June, 1941. In consequence the Comptroller calculated the amount of the increased tax for May and June, 1941, by taking two-thirds of the amount of the gross receipts for January, February, and March, 1941, from cities of over 2,500 popu-

lation, and upon which appellee had already paid the first tax levied for the quarter period ending July 1, 1941; and accordingly demanded payment of the tax, which appellee paid under protest.

With respect to the tax imposed by the amended act for the first time on gross receipts of such companies from towns of between 1,000 and 2,500 population, the Comptroller required appellee to make and file a report for the quarter period of January, February, and March, 1941, and by taking two-thirds of the gross receipts for said quarter calculated the tax claimed to be due for May and June, 1941, and demanded payment of the tax so calculated, which appellee likewise paid under protest. This suit was brought by appellee to recover the taxes so paid under protest, in accordance with the provisions of Art. 7057b, Vernon's Ann.Civ.St., and on the trial to the court without a jury recovered judgment as prayed.

The contention of appellee, which the trial court sustained, was that although the amended act was passed with the emergency clause and by the required vote when approved by the Governor to become effective on May 1, 1941, it did not do so, because it was the intention of the legislature that it should not become effective until the first day of the first full or entire quarter period to succeed the effective date, namely, on July 1, 1941. This construction was based upon the view that since the amended statute only required reports and payments on the first day of January, April, July, and October, of each year, the tax being measured by the next preceding quarter period and payable in advance, and did not by any language authorize the Comptroller to take two-thirds of the gross receipts from the quarter period ending April 1, 1941, the amended act necessarily became effective on the next succeeding tax paying date, namely, on July 1, 1941; and particularly so since appellee had already paid the tax for the quarter period ending July 1, 1941, due under the former statute. We do not so interpret the amended statute.

 An occupation or excise tax may be increased during the year in which it is payable, or may be increased at any time before the expiration of the period for the enforcement of the tax, although the tax first levied or fixed has been paid in advance. Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493; 46 L.Ed. 713; Texas Co. v. Stephens, 100 Tex. 628, 103 S.W. 481; State v. Galveston H. & S. A. Ry. Co., 100 Tex. 153, 97 S.W. 71; Williams v. City of Waynesboro, 152 Ga. 696, 111 S.E. 47; American Tobacco Co. v. Danville, 125 Va. 12, 99 S.E. 733; Cooley on Taxation, Vol. 4, 4th Ed., Sec. 1715; 37 C.J. 189, Sec. 40. Under this rule the legislature had the power to increase the tax and to levy the new tax for the unexpired portion of the quarter beginning April 1, 1941; and the fact that the first tax levied had been paid in advance is not material to the proper construction of the amended act to ascertain its effective date. It was clearly intended that the amended act should become effective on May 1, 1941. Its caption recited that it. was "amending Article 7060 * * * by providing increased rate of taxation and providing for the payment of gross receipts taxes in towns of over one thousand (1,000) and less than two thousand, five hundred (2,500) inhabitants"; it was passed with the emergencey clause and by the required vote when approved by the Governor to become effective on May 1, 1941; and it provided that taxes levied were payable in advance. It is also manifest that if the amended act became effective on May 1, 1941, the taxes for the privilege of doing business for these two months became due and payable in advance on May 1, 1941, and to hold otherwise would render nugatory the specific provision of the amended act making it effective on May 1, 1941. Having thus construed the amended act as being in force on May 1, 1941, and as requiring the payment of the taxes in advance on that date, the remaining question is whether, reasonably construed, the amended statute furnished the Comptroller a basis or method for the calculation of the amount of the taxes levied.

As above stated, it was the view of the trial court that although the amended act was passed with the emergency clause so as to become effective on May 1, 1941, it did not do so, because the legislative intent, as gathered from the act, was to make it effective on July 1, 1941. Stated more fully this view of the trial court was based upon the contention and reasoning that since both the original and the amended statute provided only for reports and tax payments on the first day of January, April, July, and October, of each year, the tax being measured by the next preceding three-month period; and since there was no language in the amended act that would authorize the Comptroller to take two-thirds of the

gross receipts from the three-month quarter ending April 1, 1941, to determine the amount of the tax due for May and June, 1941, either with respect to the increased tax on gross receipts from cities of more than 2,500 population, or with respect to the newly imposed tax on gross receipts from towns of between 1,000 and 2,500 population, the amended act necessarily became effective on the next succeeding tax paying date, July 1, 1941.

It was further contended that such provisions of the statute are plain and unambiguous and clearly express the legislative intent; but if the statute was not plain and unambiguous, both as to the time when the tax was due and the amount thereof, the Comptroller could not supply such defect in the statute, under the well settled rule of the authorities cited inhibiting him from so legislating; and that his act in so construing the doubtful or ambiguous statute in these respects was contrary to the settled rule of the authorities cited requiring a strict construction of the statute in favor of the taxpayer.

As preliminary it may be observed that the portion of the amended statute requiring quarterly reports and payments of the taxes in advance does not itself levy the taxes provided for by the amended act. Those requirements merely provide a basis or method for the calculation and collection of the taxes levied by the amended act. And if as above held the amended act became effective on May 1, 1941, the taxes for the privilege of doing business for May and June, 1941, became due and payable in advance on May 1, 1941, then we think that the Comptroller placed a reasonable construction on the amended act as authorizing him to compute the amount of taxes due for the two-third quarter period which had not expired when the amended act became effective, on May 1, 1941, by taking two-thirds of the gross receipts of the business done by appellee for the next preceding quarter period ending June 1, 1941. To hold that the legislature intended that the amended act should become effective on July 1, 1941, would render nugatory the specific intention of the legislature to make the amended act effective on May 1, 1941, as expressed in the act. It is a part of what is known as the Omnibus Tax Act, and was passed for the purpose of paying old age assistance, and the exigencies that had arisen with respect to the inability to pay the assistance; and the need for the increased and additional taxes for that purpose was recited in the emergency clause of the amended act.

No case is cited or found by us which construes the statute in question with respect to its effective date; or with respect to whether it imposed the tax for the fraction of the quarter between the date of its passage and the end of the quarter which began one month prior to its effective date. We think, however, that the cases of Texas Co. v. Stephens, supra, and Lawson v. Baker, Tex.Civ.App., 220 S.W. 260, error refused, cited by the Attorney General, each decides the question of when a statute passed with the emergency clause becomes effective, and each furnishes good analogy to the question of the effective date of the amended act here involved, which was passed with the emergency clause.

In the Stephens case the Supreme Court construed the Acts of the 29th Legislature, p. 358, which imposed an occupation tax on certain businesses, and which was passed with the emergency clause by the required vote when approved by the Governor to become effective on April 17, 1905. The act required that the tax be paid quarterly, and fixed the date of the beginning of the first quarter on April 1, 1905; but was delayed seventeen days in its passage after the date named. The tax authority calculated the tax on the basis of 73/90th of the quarter period, and demanded payment of the tax for that portion of the quarter, which the taxpayer protested upon the ground that a full quarter period had not expired between the date the act became effective and the date the tax was due on July 1, 1905. The court held that in view of the evident intention of the legislature, and the fact that the act was passed with the emergency clause, it took effect from the date of its passage, and imposed the tax for the fraction of the quarter between the date of the passage of the act and the end of the first quarter named fixed by the act.

The only distinction that can be made between the 1905 act construed in the Stephens case and the amended act here involved is that in the former the tax was not payable in advance as required by the latter. But we can see no difference on principle in the two statutes. Each required that the tax be based upon gross receipts from business done for quarter periods. Neither authorized specifically the collection of the tax for a fraction of a

quarter period. In the Stephens case, however, the court held that since the legislature passed the act there involved with the emergency clause it became effective on the date of its passage, and that the official charged with the duty of collecting the tax could compute the amount due by calculating it for the fractional portion of the quarter period remaining after the passage of the act, which procedure merely involved a mathematical calculation and required only the exercise of the administrative or ministerial power vested in the official charged with the duty of collecting the tax. In these respects this act does not differ from the amended act here involved. It was passed with the emergency clause and became effective on May 1, 1941, one month after the quarter period beginning April 1, 1941, had begun, thus leaving two-thirds of the quarter period to run after the effective date of the act, which provided that the tax levied should be paid in advance. A mere mathematical calculation would determine the portion of the quarter period remaining after the effective date of the act, and since the act provided that the tax be computed on the gross receipts from business done in the next preceding quarter period, a like mathematical calculation of two-thirds of the gross receipts for that period would determine the amount of the tax for the two-thirds of the next succeeding period remaining after the effective date of the act. And as above stated these requirements of quarterly reports and payments do not levy the tax, but merely provide a basis or method of calculation of the amount of the tax.

■■ The Lawson case is also authority for the rule that where a statute is passed with the emergency clause by the required vote when approved by the Governor, it becomes effective and immediately operative. This act was a comprehensive amendment of the State Depository Law. It became effective under its emergency clause on April 1, 1919. It provided many detailed requirements to eventually place the act in complete operation, which those affected by the act contended necessarily postponed the effective date of the amended act. The court rejected such a construction, holding that when the act was viewed as a whole and the fact that it was passed with the emergency clause conclusively showed the legislative intent that the act become immediately operative. In the instant case it is admitted that the legislature

intended that the amended act, passed with the emergency clause, became immediately effective; but appellee contends that since the legislature did not specifically provide for payment of the tax for the fractional part of the quarter period unexpired when the act became effective, that no tax could be collected for such fractional part of the quarter period. By passing the act levying the tax with the emergency clause the legislature clearly evidenced its intention to make the tax immediately collectable, and under the provisions of both the original and the amended act providing for quarterly reports and payments in advance, a mere mathematical calculation would determine the amount of the tax.

Our above conclusions require that the portion of the trial court's judgment herein appealed from be reversed and that judgment in that respect be here rendered in favor of appellants and against appellee that it take nothing by its suit; but with respect to the portion of the trial court's judgment not appealed from it is not disturbed.

Reversed and rendered.